## WILLIAMS *v.* CITY OF TALLADEGA.

ERROR TO THE SUPREME COURT OF THE STATE OF ALABAMA.

No. 44. Argued November 7, 8, 1912.—Decided December 23, 1912.

The privilege given telegraph companies under the act of July 24, 1866, to use military and post roads of the United States for poles and wire, was permissive and did not create corporate rights and privileges to carry on the business of telegraphy.

The corporate rights and privileges were derived from the laws of the State of incorporation.

The permission given by the act of 1866 does not prevent a State from

taxing the real or personal property of a telegraph company within
its borders or from imposing a license tax upon the right to do a
local business within the State. *West. Un. Tel. Co.* v. *Kansas,* 216
U. S. 1, distinguished.

Unless there is a claim that a Federal right is violated the reasonable-
ness of a municipal license ordinance is for the State to determine.

In determining its validity this court must consider a municipal ordi-
nance as it has been construed by the highest court of the State.

An agency of the Federal Government in the execution of its sovereign
power is not subject to the taxing power of the State.

An ordinance which taxes without exemption the privilege of carrying
on business, part of which is a governmental agency such as teleg-
raphy, and makes no exemption of that class of the business, in-
cludes its transaction and is void as an unconstitutional attempt to
tax a Federal agency.

Where, as in this case, the part of the license exacted necessarily affects
the whole it makes the entire tax unconstitutional and void.

164 Alabama, 633, reversed.

THE facts, which involve the validity of an ordinance of
a municipality in Alabama to impose a license fee on tele-
graph corporations transacting an intrastate business
without exempting messages sent by the Government,
are stated in the opinion.

*Mr. Rush Taggart* and *Mr. William M. Williams,* with
whom *Mr. John F. Dillon, Mr. George H. Fearon, Mr. F.
N. Whitney* and *Mr. Roy Rushton* were on the brief, for
plaintiff in error:

The act of July 24, 1866, §§ 5263–5268, Rev. Stat.,
granted to the telegraph company accepting its provisions
the right to go into any State, and as an agency of the
Government to construct, operate and maintain telegraph
lines along, over and upon the post roads, and over, under
or across the navigable waters of the United States.

No State by legislation can prevent the construction of
telegraph lines. The right to maintain and operate is
given as fully and completely as the right to construct.
This right is not simply to operate from point to point

within the State as a government agent for the transmission of government messages, but also to operate for any and all business which may be offered the telegraph company, interstate and intrastate, government and private messages alike. *Charles River Bridge Case,* 11 Pet. 420, 557; *United States* v. *Denver Ry. Co.,* 150 U. S. 1; *Brown* v. *Maryland,* 12 Wheat. 436, 467.

A franchise was granted to the telegraph company by Congress. *California* v. *Pacific R. R. Co.,* 127 U. S. 1, 35; *West. Un. Tel. Co.* v. *Texas,* 105 U. S. 460.

The property of a corporation of the United States may be taxed by a State, but not through its franchise. *Cent. Pac. R. R. Co.* v. *California,* 162 U. S. 92.

The legislation leading to the act of July 24, 1866, originated in the Senate at the first session of the 39th Congress. The legislative history of the act as it appears in Cong. Globe, pt. 2, 1st Sess., 39th Cong., p. 979, and Report of the Postmaster General, on the subject of a postal telegraph, laid before the Senate, and by it referred on June 4 to a select committee, shows clearly that with respect to intrastate as well as interstate business under this act of July 24, 1866, the Western Union Telegraph Company was created an instrumentality of the Federal Government, and endowed with a franchise to construct, maintain and operate telegraph lines on the post roads of the United States, with the duty, in the operation of these lines, to serve not only the Government of the United States under the conditions named in the act, but also to serve the public which might want to transact business over its lines.

This being so, then clearly an attempt to impose a license tax upon the company, either by any State or municipality, is an attempt to require, as a condition to the exercise of this government franchise within the State, the payment of a tax upon the grant so made by the Government. This is not permissible. See *West. Un.*

*Tel. Co.* v. *Massachusetts,* 125 U. S. 530; *Carthage* v. *First National Bank,* 71 Missouri, 508; *National Bank* v. *Chattanooga,* 8 Heisk. (Tenn.) 814.

Upon the question as to the right of the State or municipality arbitrarily thus to exclude the telegraph company, see *West. Un. Tel. Co.* v. *Kansas,* 216 U. S. 1; *Pullman Co.* v. *Kansas,* 216 U. S. 56.

The ordinance cannot be sustained as an act coming within the police power of the City of Talladega. *West. Un. Tel. Co.* v. *New Hope,* 187 U. S. 419; *Atlantic &c. Tel. Co.* v. *Philadelphia,* 190 U. S. 160; *Postal Tel. Co.* v. *Taylor,* 192 U. S. 64, do not apply, as no expense whatever was incurred in the way of police inspection or supervision in this instance.

If license fees at the average rate obtaining in Georgia, Alabama, Virginia and South Carolina for the year 1912 had been applied in all the States of the Union at cities, towns and villages where offices are maintained by the telegraph company, the total license fees would have amounted to $659,973.60 in addition to all other taxes now paid.

There is no exclusion from the ordinance of the right to do government business within the State, and the right to transact such business is likewise clearly within the prohibitions of the ordinance until the telegraph company has paid the amount demanded. *Railroad Co.* v. *Peniston,* 18 Wall. 5; *Neill, Moore & Co.* v. *Ohio,* 3 How. 720.

If a municipality may by an ordinance like this demand all the net revenue of a telegraph company as a consideration for the privilege of doing business with other points within the State, it is clear that the offices maintained in a State for both interstate and intrastate business may in time be required to be supported wholly by the interstate commerce business. This would result in abandoning many offices, thus depriving the Government of many of the facilities now available to it, and which have been

constructed and operated by the telegraph company under the act of Congress of July 24, 1866. ·

Congress has the power to grant a franchise to do an intrastate as well as an interstate telegraph business on the post roads of the United States. *Leloup* v. *Mobile,* 127 U. S. 640; *West. Un. Tel. Co.* v. *Texas,* 105 U. S. 460; *West. Un. Tel. Co.* v. *Massachusetts,* 125 U. S. 530.

Since Congress by the act of 1866, conferred upon the Western Union Telegraph Company the right to do an intrastate telegraph business along the post roads, the City of Talladega cannot impose a license tax thereon. *McCullough* v. *Maryland,* 4 Wheat. 316; *Osborn* v. *Bank of U. S.,* 9 Wheat. 740; *West. Un. Tel. Co.* v. *Visalia,* 149 California, 744; *West. Un. Tel. Co.* v. *Lakin,* 101 Pac. Rep. 1094; *West. Un. Tel. Co.* v. *Wright,* 185 Fed. Rep. 250; *Harmon* v. *Chicago,* 147 U. S. 396; *Moran* v. *Chicago,* 112 U. S. 69; *California* v. *Cent. Pac. Ry. Co.,* 127 U. S. 1, 45; *West. Un. Tel. Co.* v. *Texas,* 105 U. S. 460; *Union Pac. R. R. Co.* v. *Peniston,* 18 Wall. 5.

The ordinance is in contravention of the laws of the United States, in that it fails to exclude messages sent on Government business within the State. *Postal Tel. Co.* v. *Charleston,* 153 U. S. 692; *West. Un. Tel. Co.* v. *Texas,* 105 U. S. 460; *Leloup* v. *Port of Mobile,* 127 U. S. 650.

The ordinance is invalid for the reason that the license imposed is for revenue and not for police regulation or inspection. *Postal Tel. Co.* v. *Taylor,* 192 U. S. 64; *Sunset Tel. Co.* v. *Bedford,* 115 Fed. Rep. 202; *Ottuma* v. *Zekind,* 95 Iowa, 622; *Chaddock* v. *Day,* 75 Michigan, 527; *Austin* v. *Murray,* 16 Pick. (Mass.) 126.

The City of Talladega has no right to arrest an operator of the Western Union Telegraph Company for violating a license ordinance.

The telegraph company in the transmission of government messages is in the service of the Government as is a

rural mail carrier. *Ex parte Conway,* 48 Fed. Rep. 77; *Re Matthews,* 122 Fed. Rep. 248, 259.

The ordinance is unreasonable and therefore void.

When an ordinance imposes a license that is unreasonable in amount, the ordinance is for that reason void. *Ex parte Byrd,* 84 Alabama, 17, 20; *Hendrick* v. *State,* 142 Alabama, 43, 46; *Marion* v. *Chandler,* 6 Alabama, 899, 901; *Ex parte Frank,* 52 California, 606; *Postal Tel. Co.* v. *New Hope,* 192 U. S. 55; *Ottuma* v. *Zekind,* 95 Iowa, 622; *Simrall* v. *Covington,* 90 Kentucky, 444; *Brooks* v. *Mangan,* 86 Michigan, 576; *Chaddock* v. *Day,* 85 Michigan, 527; *St. Paul* v. *Laidler,* 2 Minnesota, 190.

*Mr. J. K. Dixon* for defendant in error:

The first point insisted on by counsel for plaintiff in error is that the franchise of the company to do business in Talladega is derived solely from Congress, and is therefore not taxable by the city for the purpose of revenue. While this court has held that where the privilege or license tax is for the use of the city and imposed upon the company's business generally it must be charged solely under police power and should be approximately what it cost for police protection and inspection, *St. Louis* v. *West. Un. Tel. Co.,* 148 U. S. 92, a different rule applies where the same is limited to a license based solely on intrastate business. In such a case the charge can be made both as a police regulation and for the purpose of raising revenue. This court has held in numerous cases that, notwithstanding a telegraph company has accepted the conditions of the act of July 24, 1866, a license fee may be imposed on such company for business done exclusively within the State. *Postal Tel. Co.* v. *Charleston,* 153 U. S. 692; *West. Un. Tel. Co.* v. *Texas,* 105 U. S. 460; *Ratterman* v. *West. Un. Tel. Co.,* 127 U. S. 411; *West. Un. Tel. Co.* v. *Pennsylvania,* 128 U. S. 39; *West. Un. Tel. Co.* v. *Massachusetts,* 125 U. S. 530; *West. Un. Tel. Co.* v. *Missouri,* 190 U. S.

412; *West. Un. Tel. Co.* v. *Seay*, 132 U. S. 472. See also 37 Cyc. 1622; *Williams* v. *Talladega*, 164 Alabama, 633; *West. Un. Tel. Co.* v. *Freemont*, 26 L. R. A. 698.

The second proposition which is urged in the brief of counsel for plaintiff in error is that even if this court followed the former decisions on this question, notwithstanding this, it will declare this ordinance invalid because of the fact that governmental messages are not excluded from this ordinance.

In this case the tax is limited in the terms of the ordinance levying it to the business of sending messages between points exclusively within the State. The fact that a part of the business done by the company consists in the sending of messages for the Government does not affect the right of the State to impose a reasonable privilege tax. Whether government messages are transmitted at a reduced rate which has material effect upon the company's income at Talladega, is the subject of proof and must be taken into account when passing upon the reasonableness of the license charged. *Moore* v. *Eufaula*, 97 Alabama, 670.

There is no evidence showing that any governmental messages were sent by the Talladega office on which any fees were charged.

This court will only consider an objection of this character, if the city or State has authority to fix a license, where it is so unreasonable that it amounts practically to confiscation. The ordinance in this case does not impose an unreasonable license fee. This court cannot review the state court as to the amount. *Postal Tel. Co.* v. *Charleston*, 153 U. S. 692; 699. If business done wholly within a State is within the taxing power of the State, the courts of the United States cannot review or correct the action of the State in the exercise of that power. *Troy* v. *West. Un. Tel. Co.*, 164 Alabama, 482.

The evidence does not show anything as to business

year in and year out, which would justify the court in pronouncing the tax in question to be void. *Williams .v. Talladega,* 164 Alabama, 633; *Atlantic Tel. Co.* v. *Philadelphia,* 190 U. S. 160; *Nashville & Chattanooga R. R.* v. *Attalla,* 118 Alabama, 362.

MR. JUSTICE DAY delivered the opinion of the court.

This is a writ of error to review the judgment of the Supreme Court of the State of Alabama affirming the judgment of the City Court of Talladega. 164 Alabama, 633.

D. G. Williams, the plaintiff in error, was convicted of doing business in the City of Talladega, as agent of the Western Union Telegraph Company, from October 1, 1908, to December 31, 1908, without taking out and paying for a license, in violation of an ordinance of the city. The ordinance contained a schedule of licenses for divers businesses, vocations, occupations and professions carried on in the city, among others, the following:

"158. Telegraph Company. Each person, firm or corporation commercially engaged in business of sending messages to and from the City to and from points in the state of Alabama for hire or reward....$100."

Section 2 of the ordinance declared that the license was exacted in the exercise of the police power of the city, as well as for the purpose of raising revenue for the city. The fourth section provided that any person, firm or corporation who engaged in any trade, business or profession for which a license was required, without first having obtained such license, should be guilty of an offense and upon conviction should be fined not less than one and not more than one- hundred dollars, and that each day should constitute a separate offense.

The record discloses that the corporation was organized

under the laws of the State of New York and had accepted the provisions of the act of Congress of July 24, 1866, 14 Stat. 221, c. 230 (Rev. Stat., §§ 5263–5268) and for several years theretofore and during the years 1907 and 1908 had had an office in the City of Talladega and was engaged in the business of transmitting messages between private parties and between the departments and agencies of the United States Government from Talladega to other points in the State of Alabama and also from other points in the State of Alabama to Talladega; that during the months of October, November and December, 1908, Williams was employed by the Western Union Telegraph Company as manager of its office at Talladega; that a license fee of $25 was demanded of him for the quarter ending December 31, 1908, which was refused, and that he was fined $25 and costs, and in the event of his failure to pay the fine and costs he was sentenced to labor on the streets for fifty days. It also appears that the Western Union Telegraph Company pays taxes on its property in the State. In addition to the agreed facts, from which the above statement is taken, it is shown by the testimony of the defendant that the lines of the Western Union Telegraph Company enter and leave the city over the right of way of the Southern Railroad and the Louisville and Nashville Railroad, both of which are public railroads, and that within the City of Talladega the company has lines which leave the right of way of the railroad companies and proceed along public streets to the office of the company; and also that government messages were relayed daily at the Talladega office; that it received messages between the different departments of the Government of the United States at this office from points within the State; and that government messages were given a preference and were sent at reduced rates. From the testimony, the Supreme Court of Alabama found that for the year 1908, not including the month of January, the

company did its intrastate business at a net loss of eighty-six cents.

This case differs from some cases which have been in this court involving the right to tax the Western Union Telegraph Company, in that it places emphasis upon the alleged immunity from taxation of the class herein involved, because, it is contended, by the act of 1866, Congress, by virtue of the authority given it to establish post roads, conferred Federal franchises upon the company and made the Western Union Telegraph Company an instrumentality of the Federal Government, endowed with franchises to construct, maintain and operate telegraph lines on the post roads of the United States, with the duty in the operation of those lines not only to serve the Government of the United States, but also to serve the public which might wish to transact business over its lines. This being so, it is now insisted that the attempt to impose a license tax upon the company, either by the State of Alabama or any of its municipalities, is an attempt to impose a tax on the franchises so created by the Federal Government.

The question made upon this point was considered in *Postal Telegraph Cable Co.* v. *Charleston,* 153 U. S. 692. In that case the Postal Telegraph Cable Company had accepted the provisions of the act of 1866, and the state statute imposed a license of $500 upon the telegraph company for business done exclusively within the City of Charleston, not including any business done to or from points without the State and not including any business done by the officers of the United States. It was contended for the telegraph company that the license required by the ordinance was a tax upon it for the privilege of exercising its franchise within the City of Charleston; that the telegraph company having constructed its lines along post roads in the City of Charleston and elsewhere, no state or municipal authority could collect a license fee

from it for the privilege of conducting its business, "*thus restraining the powers possessed by it under its franchises and under the acts of Congress,*" and furthermore that the ordinance in question was an interference with interstate commerce and therefore void. It will thus be seen that in that case not only was the contention made as to the interstate commerce feature of the telegraph company's business, but it was specifically claimed that to exact such a license would restrain the powers possessed by it under the franchises created by the act of Congress. After reviewing a number of cases, Mr. Justice Shiras, who delivered the opinion of the court, said (p. 700):

"It is further contended that the ruling of the cited cases does not cover the case of a telegraph company which has constructed its lines along the post roads in the City of Charleston, and elsewhere, and which is exercising its functions under the act of Congress as an agency of the Government of the United States. It is obvious that the advantages or privileges that are conferred upon the company by the act of July 24, 1866 (Rev. Stat., §§ 5263–5268), are in the line of authority to construct and maintain its lines as a means or instrument of interstate commerce, and are not necessarily inconsistent with a right on the part of the State in which business is done and property acquired to tax the same, within the limitations pointed out in the cases heretofore cited."

In *Western Union Telegraph Co.* v. *Gottlieb*, 190 U. S. 412, this court, again considering the act of 1866, after quoting from the opinion of Mr. Justice Miller in *Western Union Telegraph Co.* v. *Massachusetts*, 125 U. S. 530, said (p. 423), speaking by Mr. Justice McKenna:

"These propositions were laid down: That the company owed its existence as a corporation and its right to exercise the business of telegraphy to the laws of the State under which it was organized; that the privilege of running the lines of its wires over and along the mili-

tary and post roads of the United States was granted by the act of Congress, but that the statute was merely permissive and conferred no exemption from the ordinary burdens of taxation; that the State could not by any specific statute prevent a corporation from placing its lines along the post roads or stop the use of them after they were so placed, but the corporation could be taxed in exchange for the protection it received from the State 'upon its real or personal property as any other person would be.' And describing the particular tax imposed it was said:

"'The tax in the present case, though nominally upon the shares of the capital stock of the company, is in effect a tax upon that organization on account of property owned and used by it in the State of Massachusetts, and the proportion of the length of its lines in that State to their entire length throughout the whole country is made the basis for ascertaining the value of that property. We do not think that such a tax is forbidden by the acceptance on the part of the telegraph company of the rights conferred by section 5263 of the Revised Statutes, or by the commerce clause of the Constitution.'"

In the latest utterance of this court upon the subject under consideration, *Western Union Telegraph Co.* v. *Richmond*, 224 U. S. 160, Mr. Justice Holmes, delivering the opinion of the court, said (p. 169):

"The act of Congress of course conveyed no title and did not attempt to found one by delegating the power to take by eminent domian. *Western Union Telegraph Co.* v. *Pennsylvania Railroad Co.*, 195 U. S. 540, 574. It made the erection of telegraph lines free to all submitting to its conditions, as against an attempt by a State to exclude them because they were foreign corporations, or because of its wish to erect a monopoly of its own. *Pensacola Telegraph Co.* v. *Western Union Telegraph Co.*, 96 U. S. 1. It has been held to prevent a State from stopping the

operation of lines within the act by injunction for failure to pay taxes. *Western Union Telegraph Co.* v. *Attorney General of Massachusetts,* 125 U. S. 530. But except in this negative sense the statute is only permissive, not a source of positive rights."

These cases, taken together, establish the proposition that the privilege given under the terms of the act to use the military and post roads of the United States for the poles and wires of the company is to be regarded as permissive in character and not as creating corporate rights and privileges to carry on the business of telegraphy, which were derived from the laws of the State incorporating the company, and that this permissive grant did not prevent the State from taxing the real or personal property belonging to the company within its borders or from imposing a license tax upon the right to do a local business within the State. Nor is there anything running counter to the former cases in the case of *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1, wherein it was held that the attempt to levy a graded charter fee upon the entire capital stock of the Western Union Telegraph Company, a corporation of another State, engaged in commerce among the States, as a condition to the right to do local business within the State of Kansas, was void as an attempt, when the substance of things was reached, to tax the right of the company to do interstate business within the State and as a tax upon property beyond the limits and jurisdiction of the State.

It is further contended that the tax is unreasonable and unjust because of its effect upon interstate business. The reasonableness of the ordinance, unless some Federal right set up and claimed is violated, is a matter for the State to determine. It is contended that the result of the tax upon the intrastate business conducted at a loss is to impose a burden upon the other business of the company and is therefore void. The Supreme Court of Alabama,

however, reached the conclusion that the attempted test for eleven months, showing a loss of eighty-six cents, is not a sufficiently accurate representation of the business of the company conducted at Talladega to render the tax void. With this view we agree, and we are not satisfied that the tax is such as to impose a burden upon interstate commerce, and therefore make it subject to attack as a denial of Federal right.

It is further contended that this ordinance is void because it makes no exception as to the sending of government messages. In this respect it is suggested in the brief of the defendant in error that the ordinance may be construed as not to include business transacted by the company as an agency of the Government, and as applying only to commercial business of a different character; but, in view of the construction which the Supreme Court of Alabama has placed upon it, we must consider the ordinance as construed by that court. Upon the authority of a previous case (*Moore* v. *Eufaula,* 97 Alabama, 670), it held the ordinance valid, although it does not exclude messages sent for the Government of the United States. In this connection it said:

"The fact that a part of the business done by the company consists in the sending of messages for the government does not affect the right of the state to impose a reasonable privilege tax, . . ."

We therefore have to consider whether a license tax by a State on the doing of business within the State, including the transmission of government messages, by a telegraph company which has accepted the terms of the act of 1866, can be lawfully imposed. By the act of 1866 government messages are given priority over all other business and are transmitted at the rates annually fixed by the Postmaster General; and before the telegraph companies exercise any of the powers or privileges conferred by the law they are required to file with the Post-

master General their written acceptance of the restrictions and obligations of the act (Rev. Stat., §§ 5266 and 5268).

This court has had occasion to consider the effect of this legislation and the acceptance of its terms by the telegraph company, so far as the transmission of government telegrams and the transaction of government business is concerned. In the case of *Telegraph Co.* v. *Texas*, 105 U. S. 460, an ordinance was held void which required the company to pay a tax of one cent for all full rate messages sent, and one-half cent for every message less than full rate. This was in addition to taxes paid by the company on real and personal property in the State. The ordinance was held void as levying a tax upon interstate messages and also void in so far as it undertook to tax the transaction of government business. After declaring that as to such business companies which had accepted the terms of the act became government agencies, this court, speaking by Mr. Chief Justice Waite, said (p. 464):

"The Western Union Telegraph Company having accepted the restrictions and obligations of this provision by Congress, occupies in Texas the position of an instrument of foreign and interstate commerce, and of a government agent for the transmission of messages on public business. Its property in the State is subject to taxation the same as other property, and it may undoubtedly be taxed in a proper way on account of its occupation and its business. The precise question now presented is whether the power to tax its occupation can be exercised by placing a specific tax on each message sent out of the State, or sent by public officers on the business of the United States."

And, after dealing with the interstate commerce feature of the law, said (p. 466):

"As to the government messages, it is a tax by the State on the means employed by the government of the United States to execute its constitutional powers, and therefore,

void. It was so decided in *McCulloch* v. *Maryland* (4 Wheat. 316), and has never been doubted since."

The ordinance sustained in *Postal Telegraph Cable Co.* v. *Charleston, supra,* expressly excluded interstate and government messages.

Were it otherwise, an agency of the Federal Government, in the execution of its sovereign power, would be at the mercy of the taxing power of the State. It is enough in this connection to refer to the cases of *McCulloch* v. *Maryland, supra; Osborn* v. *Bank,* 9 Wheat. 738; *Railroad Co.* v. *Peniston,* 18 Wall. 5; *California* v. *Central Pacific R. R. Co.,* 127 U. S. 1; *Central Pacific R. R. Co.* v. *California,* 162 U. S. 91.

We have, then, an ordinance which taxes, without exemption, the privilege of carrying on a business a part of which is that of a governmental agency constituted under a law of the United States and engaged in an essential part of the public business—communication between the officers and departments of the Federal Government. The ordinance, making no exception of this class of business, necessarily includes its transaction within the privilege tax levied. This part of the license exacted necessarily affects the whole and makes the tax unconstitutional and void. In *Leloup* v. *Port of Mobile,* 127 U. S. 640, Mr. Justice Bradley, speaking for the court, said (p. 647):

"It is urged that a portion of the telegraph company's business is internal to the state of Alabama, and therefore taxable by the state. But that fact does not remove the difficulty. The tax affects the whole business without discrimination." And see *Western Union Co.* v. *Alabama Assessment Board,* 132 U. S. 472, 477; *Allen* v. *Pullman Car Co.,* 191 U. S. 171, 179.

For this reason we think the judgment of the Supreme Court of Alabama should be reversed and the case remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed.*