O. R. FERGUSON, MARSHAL OF THE CITY OF MIAMI, *Plaintiff in Error*, v. W. H. McDONALD, *Defendant in Error*.

Opinion Filed December 17, 1913.

1. Municipalities can lawfully exercise only such taxing, police and other powers as are conferred by express or implied provisions of statutes within the limitations imposed by organic law.

2. Every act of a municipality through its officers should be

within the powers legally conferred, should be based upon a proper classification of subjects, should be reasonable, and should not violate any provision or principle of law.

3.  There is no express limitation upon the power of the Legislature to provide for levying a tax on licenses, whether it be levied directly by and for the State or thorugh a municipality for its purposes; but such power should not be so exercised as to deprive any person of property without due process of law, or so as to deny to any person the equal protection of the laws, or so as to encroach upon the dominant authority of Congress to regulate interstate and foreign commerce, or so as to impose a tax or burden upon interstate commerce or upon the means employed by the government of the United States to execute its constitutional powers.

4.  Where there are valid local or special laws relating to the powers and government of particular municipalities that are in conflict with the general statutory law, such local or special laws prevail.

5.  Notwithstanding the language of the general license revenue law, Chapter 5597, that "no further license tax shall be imposed by any county or municipality" upon telegraph companies, the powers conferred by the special charter act and the provision of the same act that "nothing in this act shall be construed as in any way abridging or limiting the powers which have been granted or may be granted to any municipal corporation by special act or by charter act for the purpose of requiring the payment of license taxes," considered in connection with the terms and purpose of the organic law that the powers of any municipality may be controlled by local or special laws, confer upon the city the power to impose a valid license tax upon telegraph companies engaged in the city in doing intrastate business. If the ordinance of the city imposing the license tax in question does not encroach upon the paramount authority of Congress to regulate interstate or foreign commerce, and does not impose a burden or tax upon interstate commerce or upon an agency of the United States in performing a service for the government, which are the

only organic objections here made to the ordinance, it should be enforced.

6. The permissive grant from the United States to Telegraph Companies to use the military and post roads for the poles and wire of such companies, "does not prevent the State from taxing the real or personal property belonging to the companies in the State, or from imposing a license tax upon the right to do a local business within the State.

7. The ordinance of the City of Miami imposing a municipal license tax of $100.00 on telegraph companies relates solely to intrastate business done in the city; and does not apply to and cannot be lawfully enforced so as to apply to or regulate or impose a burden upon foreign or interstate messages or messages whether foreign, interstate or intrastate sent by or for the United States government. Thus construed the ordinance does not conflict with Federal law.

Writ of error to Circuit Court of Dade County; L. W. Bethel, Judge.

Judgment reversed.

*J. L. Billingsley,* for Plaintiff in error;

*James T. Sanders,* for Defendant in error.

WHITFIELD, J.—In habeas corpus proceedings W. H. McDonald was discharged from custody of the city marshal under a sentence of conviction by the municipal court of the City of Miami, Florida, for violating the ordinance of the city by doing business in said city as Agent of the Western Union Telegraph Company, which such company had not procured a license to do business therein as required by the city ordinance, the court holding the ordinance imposing the license tax on the company

to be invalid. The city through its marshal obtained a writ of error under the statute. Sec. 2257 Gen. Stats. of 1906.

Municipalities can lawfully exercise only such taxing, police and other powers as are conferred by express or implied provisions of statutes within the limitations imposed by organic law. Every act of a municipality through its officers should be within the powers legally conferred, should be based upon a proper classification of subjects, should be reasonable, and should not violate any provision or principle of law. Hardee v. Brown, 56 Fla. 377, 47 South. Rep. 834; State *ex rel.* Worley v. Lewis, 55 Fla. 570, 46 South. Rep. 630; State *ex rel.* Ellis v. Tampa Water Works Co., 56 Fla. 858, 47 South. Rep. 358, 19 L. R. A. (N. S.) 183; Florida Cent. & P. R. Co. v. Ocala St. & S. R. Co., 39 Fla.306, 22 South. Rep. 692.

The constitution of the State contains the following provisions:

"The Legislature shall establish a uniform system of county and municipal government, which shall be applicable except in cases where local or special laws are provided by the Legislature that may be inconsistent therewith." Sec. 24, Art. III.

"The Legislature shall have power to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time." Sec. 8, Art. VIII.

"The Legislature may also provide for levying  *  *  * a tax on licenses." Sec. 5, Art. IX.

There is no express limitation upon the power of the Legislature to provide for levying a tax on licenses, whether it be levied directly by and for the State or through a municipality for its purposes; but such power should not be so exercised as to deprive any person of

property without due process of law, or so as to deny to any person the equal protection of the laws, or so as to encroach upon the dominant authority of Congress to regulate interstate and foreign commerce, or so as to impose a tax or burden upon interstate commerce or upon the means employed by the government of the United States to execute its constitutional powers. Hardee v. Brown, *supra;* Cason v. Quimby, 60 Fla. 35, 53 South. Rep. 741; In re Watson, 17 S. Dak. 486, 97 N. W. Rep. 463, 2 Ann. Cas. 321, and cases cited in notes; Bradley v. City of Richmond, 227 U. S. 477, —— Sup. Ct. Rep. ——; Quong Wing v. Kirkendall, 223 U. S. 59, —— Sup Ct. Rep. ——; Caldwell v. North Carolina, 187 U. S. 622, 23 Sup. Ct. Rep. 229; Crenshaw v. Arkansas, 227 U. S. 389, —— Sup. Ct. Rep. ——; Williams v. City of Talledega, 226 U. S. 404, —— Sup. Ct. Rep. ——; Telegraph Co. v. Texas, 105 U. S. 460.

The general State revenue license law, Chapter 5597, Laws of Florida, approved June 1, 1907, provides as follows: "Telegraph systems, including cable lines owned by any person, firm, corporation or company operating in this State shall pay a license tax to the Comptroller of fifty cents per mile, one-half of which shall be paid to each county in which or through which said telegraph line runs, in proportion to the milage in any such county, and no further license tax shall be imposed by any county or municipality." "Nothing in this act shall be construed as in any way abridging or limiting the powers which have been granted or may be granted to any municipal corporation by special act or charter act for the purpose of requiring the payment of license taxes."

The special charter act of the City of Miami, Chapter 5823, Laws of Florida, approved May 27th, 1907, provides in section 20: "That the city council * * * shall

have power to pass all such ordinances and prescribe penalties for the violation thereof, as may be necessary * * * to license privileges, businesses, occupations and professions carried on and engaged in within the city limits, and the amounts of such license and the amount of such license taxes shall be fixed by city ordinance, which amounts of said taxes shall not be dependent upon a general State revenue law."

The city ordinances authorized by the above section of the charter act are therein expressly required to be "not inconsistent with * * * the constitution and laws of the United States." This limitation upon the power of the city to make and enforce ordinances would attach by necessary implication if not expressly written in the charter. See Crenshaw v. Arkansas, 227 U. S. 389.

The constitution and laws of this State provide for a uniform system of municipal government which shall be applicable *except* where special or local laws for the government of particular municipalities are enacted that are inconsistent with the general laws on the subject. Where there are valid local or special laws relating to the powers and government of particular municipalities that are in conflict with the general statutory law, such local or special laws prevail. This policy and principle are expressly recognized in the quoted ordinance provisions and in the extracts herein taken from chapters 5597 and 5823, Acts of 1907, as affecting this case.

Notwithstanding the language of the general license revenue law, Chapter 5597, that "no further license tax shall be imposed by any county or municipality" upon telegraph companies, the powers conferred by the special charter act and the provision of the same act that "nothing in this act shall be construed as in any way abridging or limiting the powers which have been granted or may be

granted to any municipal corporation by special act or by charter act for the purpose of requiring the payment of license taxes," considered in connection with the terms and purposes of the organic law that the powers of any municipality may be controlled by local or special laws, confer upon the city the power to impose a valid license tax upon telegraph companies engaged in the city of doing intrastate business.

If the ordinance of the city imposing the license tax in question does not encroach upon the paramount authority of Congress to regulate interstate or foreign commerce, and does not impose a burden or tax upon interstate commerce or upon an agency of the United States performing a service for the government, which are the only organic objections here made to the ordinance, it should be enforced.

The ordinance of the City of Miami, provides:

"That it shall be unlawful for any person, firm or corporation to engage in, conduct or manage the business, occupation or profession hereinafter mentioned, in the City of Miami unless a city license shall have been first procured from the City Tax Collector. That a license tax shall be collected from every person, firm or corporation, engaging in, conducting or managing any of the businesses, occupations, or professions hereinafter specifically enumerated, which is hereby fixed at the respective amounts set opposite each business, occupation or profession hereunder.

Telegraph companies, $100.00.

Any person or persons * * * violating the provisions of any section of this ordinance, shall, upon conviction, be punished by fine not exceeding two hundred ($200.00) dollars or by imprisonment for a period not exceeding ninety days, or by both such fine and imprison-

ment ,for each offense. It shall be the duty of all officers and agents or any corporation to see that such corporation complies with the provisions of this ordinance, and all officers and agents of any corporation required by this ordinance to be licensed, which shall do business without having paid the license tax hereby imposed and procure such license, shall be subject to the penalty imposed by the preceding section upon persons * * * violating this ordinance."

The privilege given by the Act of Congress of July 24th, 1866, 14 Stats. 221, c. 230 (Rev. Stats. U. S. Secs. 5263-5268) to telegraph companies to use the military and post roads of the United States for the poles and wires of such companies, is to be regarded as permissive in character and not creating corporate rights and privileges to carry on the business of telegraphy, which were derived from the laws of the State incorporating the companies, which corporate rights are by comity recognized and permitted to be used in other States. The permissive grant from the United States to use the military and post roads, "does not prevent the State from taxing the real or personal property belonging to the companies in the State, *or from imposing a license tax upon the right to do a local business within the State."* Williams v. Talledega, 226 U. S. 404, text 416.

The statute does not authorize, but expressly forbids, the adoption of ordinances by the city that are "inconsistent with the constitution and laws of the United States." Construed with reference to the authority under which it was adopted, the ordinance here in question is not applicable to interstate business or to messages sent by or for the United States Government, but it is confined to the right and privilege to do a local or intrastate business, not including governmental messages whether interstate

or intrastate. Thus interpreted the ordinance is in accord with the decision in Postal Tel. Co. v. Charleston, 153 U. S. 692, 14 Sup Ct. Rep. 1094.

The fact that in addition to its intrastate commercial business the telegraph company does interstate business and also transmits messages for the United States Government, does not exempt the company from regulation and taxation by State authority as to its local or intrastate commercial business, when such State regulation as construed by the State court does not violate any provision or principle of Federal law and does not burden or interfere with the transmission of interstate governmental messages. United States Express Co. v. Minnesota, 223 U. S. 335, —— Sup. Ct. Rep. ——; Osborne v. State, 33 Fla. 162, 14 South. Rep. 588. 39 Am. St. Rep. 99, 25 L. R. A. 120, 164 U. S. 650, 17 Sup. Ct. Rep. 214; Simpson v. Shepard, 230 U. S. 352, 33 Sup. Ct. Rep. 729; Baltic Mining Co. v. Mass., 231 U. S. 68, 34 Sup. Ct. Rep. 15. In Williams v. Talledega, 226 U. S. 404, the ordinance was held invalid by the Supreme Court of the United States because the Supreme Court of Alabama had held that the ordinance there assailed was valid even though it was construed to include messages sent by or for the United States Government. See Telegraph Co. v. Texas, 105 U. S. 460. In determining the validity of a municipal ordinance under the Federal law, the courts must consider the ordinance as it has been construed by the highest court of the State. Williams v. Talledega, *supra*.

The city ordinance imposing a license tax on telegraph companies doing business in the municipality relates solely to intra-state business done in the city, not including governmental messages; and such ordinance by its terms or by its necessary effect, does not apply to or regulate or impose a burden upon inter-state commerce, or

apply to or burden governmental messages, nor does the ordinance appear to be arbitrary or unreasonable; and it is not shown that it will be invalid or unreasonable, or unduly burdensome in its operation. The ordinance cannot lawfully be enforced so as to in any substantial way materially burden or regulate interstate commerce, or so as to in any way seriously impair the interstate business of telegraph companies or the sending of governmental messages, or so as to violate any provision or principle of fundamental or organic law either State or Federal. Baltic Mining Co. v. Mass., 231 U. S. 68, 34 Sup. Ct. Rep. 15. The business of transmitting both interstate messages and all messages sent by or for the United States can be engaged in without reference to the ordinance. Any enforcement of the ordinance should not violate Federal or fundamental law; and should not interfere with the duty of the telegraph company in transmitting interstate mesasges or messages for the Federal Government. See New England Tel. Co. of Massachusetts v. Town of Essex, 206 Fed. Rep. 926. The tax here is wholly unlike the tax held to be invalid in Western Union Tel. Co. v. Kansas, 216 U. S. 1, 30 Sup. Ct. Rep. 190.

It is also contended that the arrest and custody of the agent of the telegraph company is illegal because on the day of the arrest the telegraph company was engaged in transmitting interstate and governmental messages, and "it is of the greatest importance that the telegraph lines of the United States Government should be open and clear at all times." The mere fact that the telegraph company is engaged in sending interstate and government message does not exempt the company or its agents from the operation of valid State and municipal taxation and regulations of local and intrastate business, where such regulations do not burden interstate commerce or violate any

paramount authority or regulation of Congress. Allen v. Pullman's Palace Car Co., 191 U. S. 171, 24 Sup. Ct. Rep. 39. It does not appear that Congress has made or authorized any regulations upon the subject, and there is nothing to indicate that the enforcement of the license ordinance has in any way encroached upon the authority of Congress in the premises, or interfered with or burdened the business of the company in transmitting interstate or government messages. Even if mere failure to obey the license ordinance does not offend morals or be a breach of the peace, and even though a civil remedy is afforded the city for collecting the license tax, these considerations do not curtail the express authority given the city to enforce its license tax ordinances by the imposition of penalties upon individuals after conviction, particularly when such enforcement does not in any manner burden or interfere with interstate or government business.

The judgment is reversed.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL AND HOCKER, J. J., concur.