STATE, APPELLANT, *v.* MONTANA-DAKOTA UTILITIES CO., RESPONDENT.

(No. 8336.)

(Submitted January 20, 1943. Decided January 22, 1943.)

[133 Pac. (2d) 354.]

*Mr. Howard M. Gullickson,* Attorney General, and *Mr. I. W. Choate,* Counsel for the State Board of Equalization, for Appellant, submitted a brief; *Mr. Fred Lay,* and *Mr. George S. Smith,* Assistant Attorneys General, argued the cause orally.

164

*Messrs. Hildebrand & Warren, Mr. Edmond G. Toomey, Mr. Edgar M. Hall, Messrs, Toomey, McFarland & Hall,* and *Messrs. Faegre & Benson,* of the Bar of Minneapolis, Minnesota, of Counsel for Respondent, submitted a brief; *Mr. Wendell O. Rogers,* representing the latter firm, argued the cause orally.

166

168

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

The state appeals from a judgment declaring section 2408.2,

Revised Codes, void in so far as it purports to impose a license tax on persons engaged in or carrying on the business of conveying through a pipe line gas produced within this state for the purpose of use outside the state.

By this action the state sought to collect from defendant the sum of $5,379.18, which, it is agreed, is the amount of the tax sought to be imposed by the Act in question upon the amount of gas conveyed by defendant during the first quarter of 1941 through its pipe lines to points outside the state of Montana, and the sole question is the validity of the tax. The cause was submitted on an agreed statement of facts and the trial court made clear and complete findings of fact and conclusions of law, and rendered judgment for defendant accordingly.

Section 2408.2, Revised Codes, was enacted as section 2 of Chapter 180 of the Laws of 1933, the material part of the title of which is as follows: "An Act requiring every person, firm, co-partnership, association, joint stock company, syndicate and corporation engaging in or carrying on the business of distributing natural gas within this state or conducting natural gas produced within this state through a pipe line to a point outside the State; to pay to the State Treasurer for engaging in carrying on such business certain license fees for the exclusive use and benefit of the State of Montana; * * *."

With certain exceptions and other provisions not material for the purposes of this suit, section 2 of that chapter, as amended by Chapter 52, Extra Session of 1933-34, and now appearing as section 2408.2, Revised Codes, provides: "Every person engaged in or carrying on the business of distributing to the public within this state, natural gas, produced, or not produced within this state, or conveying through a pipe line gas produced within this state for the purpose of use outside this state, or engaged in or carrying on the business of owning, controlling, managing, leasing or operating within this state, any system or plant for the distribution of natural gas, produced, or not produced within this state, to the public within this state,

must, for the year 1934, and each year thereafter when engaged in carrying on such business in this state, pay to the State Treasurer for the exclusive use and benefit of the State of Montana, a license tax for engaging in and carrying on such business, an amount equal to three-eighths (⅜) of one (1) cent for each one thousand (1000) cubic feet of such natural gas, produced within this state, or not produced within this state, and distributed·by such person to the public within this state, during such year, or conveyed through a pipe line to a point outside this state during such year, * * *.''

Thus, enumerating first the license tax in question here, the statute imposes license taxes upon those engaged in either of the following two businesses: First, ''the business of * * * conveying through a pipe line gas produced within this state for the purpose of use outside this state,'' and, second, ''the business of distributing to the public within this state, natural gas, produced, or not produced within this state'' or ''owning, controlling, managing, leasing or operating within this state, any system or plant for'' such public distribution.

The first is manifestly a license tax imposed on the business of engaging in certain interstate commerce, since it relates solely to the conveying of gas produced within the state for use outside of the state and therefore across state lines.

The second relates, not to the corresponding business of conveying gas in pipe lines for use within the state, but to the business of distributing natural gas to the public within the state (or controlling a plant therefor). That this is not a distinction without a difference is shown by the fact that the state does not claim a tax upon all the natural gas conveyed through defendant's pipe lines. The defendant is engaged in four allied businesses so far as its pipe lines are concerned.

First, the business of conveying natural gas in interstate commerce, on which the state by this action seeks to collect the license tax.

Second, the business of distributing natural gas to the public within the state (and controlling a plant for that purpose).

Upon this business defendant pays the license tax imposed upon it by the second provision of section 2408.2 mentioned above, and no question is raised concerning it.

Third, the business of conveying through its pipe lines and selling natural gas to other distributors for distribution to the public within the state. The law does not require, and the defendant does not pay, a license tax upon this business; but the distributor to which it sells pays a license tax upon the business of distributing the gas to the public under the second provision of section 2408.2 mentioned above.

Fourth, the business of conveying through its pipe lines and selling natural gas to the United States government for the latter's use at Fort Peck. The statute imposes and the state claims no tax upon this business.

Thus the license tax imposed, or sought to be imposed upon ██ ██ defendant by the Act is not upon both the interstate and intrastate transportation of natural gas. It is imposed only upon the interstate transportation and upon the entirely different business of intrastate distribution of gas to the public. Therefore so far as the business of transporting natural gas is concerned, the tax burdens the interstate and not the intrastate business and therefore discriminates directly against the former. It has seemed necessary to consider this point since plaintiff admits that a tax upon interstate business is objectionable where it is discriminatory.

Nevertheless plaintiff contends that the tax upon the business of distributing gas to the public constitutes to that extent a tax upon the intrastate transportation of natural gas used for that purpose, and that to that extent the tax constitutes a non-discriminatory tax upon both intrastate and interstate commerce and is therefore valid. However, even if the tax upon the intrastate distribution of gas to the public (the second business of defendant mentioned above) is considered as a tax upon the intrastate transmission of the gas so distributed, there is still a discrimination, since no tax is imposed upon the other two intrastate businesses (the third and fourth businesses of

defendant mentioned above), nor upon the intrastate transmission of the gas used in those businesses.

Furthermore, without regard to the question of discrimination within the state, it is generally held that a state tax which imposes a direct burden upon interstate commerce is void (*State v. Northern Pacific Express Co.,* 27 Mont. 419, 71 Pac. 404, 94 Am. St. Rep. 824) ; for if each of the states concerned in certain interstate commerce imposes nondiscriminatory taxes upon both intrastate and interstate business, the result is at least to double or triple the burden on interstate commerce as compared to the intrastate commerce in any one of the states.  (*Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250, 58 S. Ct. 546, 82 L. Ed. 823, 115 A. L. R. 944; *Gwin, White & Prince Case* (*Gwin, White & Prince* v. *Henneford*), 305 U. S. 434, 59 S. Ct. 325, 83 L. Ed. 272.)   Even a nondiscriminatory tax cannot be sustained if it directly burdens interstate commerce.  (*Adams Mfg. Co.* v. *Storen,* 304 U. S. 307, 58 S. Ct. 913, 82 L. Ed. 1365, 117 A. L. R. 429; *Cooney* v. *Mountain States Telephone & Telegraph Co.,* 294 U. S. 384, 55 S. Ct. 477, 480, 79 L. Ed. 934.)   In the latter case, affirming a federal court judgment which enjoined the enforcement of a Montana license tax law, the court said in a decision written by Mr. Chief Justice Hughes:

''Appellants contend that the taxes are imposed solely upon intrastate commerce and do not burden interstate commerce. They insist that the taxes are laid upon the intrastate business measured by the number of telephones in intrastate use.   Appellants challenge the findings that all of appellee's telephones in Montana are instrumentalities of interstate and foreign commerce, and that appellee could not discontinue its intrastate business without being compelled to withdraw from its interstate and foreign business, as being unsupported by the evidence. * * *

''The tax is a privilege, or occupation, tax. * * * The business is the maintaining of telephone lines and the furnishing of telephone service in the state.   No distinction is made between interstate and intrastate service. * * * The tax is thus laid simply

by reason of the fact that the company is furnishing telephone service and is based upon the number of telephone instruments used in that service without regard to its character whether intrastate or interstate. * * *

"The evidence supports the findings that these telephone instruments are available for interstate and foreign communications. * * * More than 10,000 of these instruments have actually been used in interstate and foreign commerce since the tax was laid. * * *

"There is no question that the state may require payment of an occupation tax from one engaged in both intrastate and interstate commerce. But a state cannot tax interstate commerce; it cannot lay a tax upon the business which constitutes such commerce or the privilege of engaging in it. And the fact that a portion of a business is intrastate and therefore taxable does not justify a tax either upon the interstate business or upon the whole business without discrimination. (*Leloup* v. *Mobile*, 127 U. S. 640, 8 S. Ct. 1380, 32 L. Ed. 311.) There are 'sufficient modes' in which the local business may be taxed without the imposition of a tax 'which covers the entire operations.' (Id., page 647 of 127 U. S., 8 S. Ct. 1380, 1383. See *Williams* v. *Talladega*, 226 U. S. 404, 419, 33 S. Ct. 116, 57 L. Ed. 275.) Where the tax is exacted from one doing both an interstate and intrastate business, it must appear that it is imposed solely on account of the latter; that the amount exacted is not increased because of the interstate business done; that one engaged exclusively in interstate commerce would not be subject to the tax; and that the one who is taxed could discontinue the intrastate business without also withdrawing from the interstate business. (*Sprout* v. *South Bend*, 277 U. S. 163, 171, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45; *East Ohio Gas Co.* v. *Tax Commission*, 283 U. S. 465, 470, 51 S. Ct. 499, 75 L. Ed. 1171.)

"A privilege or occupation tax which a state imposes with respect to both interstate and intrastate business, through an indiscriminate application to instrumentalities common to both

174

sorts of commerce, has frequently been held to be invalid. [Citing cases.] * * *

"In the instant case, the tax, being indivisible and indiscriminate in its application, necessarily burdens interstate commerce. We do not pass upon the other question presented."

Plaintiff contends further that such tax is not objectionable ▆ in the absence of federal legislation relating to the same subject; but the rule is otherwise. In *State of Missouri* v. *Kansas Natural Gas Co.*, 265 U. S. 298, 44 S. Ct. 544, 545, 68 L. Ed. 1027, the court said:

"The line of division between cases where, in the absence of congressional action, the state is authorized to act, and those where state action is precluded by mere force of the commerce clause of the Constitution, is not always clearly marked. In the absence of congressional legislation, a state may constitutionally impose taxes, enact inspection laws, quarantine laws and, generally, laws of internal police, although they may have an incidental effect upon interstate commerce. (*Pennsylvania R. Co.* v. *Hughes,* 191 U. S. 477, 488-491, 24 S. Ct. 132, 48 L. Ed. 268.) But the commerce clause of the Constitution, of its own force, restrains the states from imposing direct burdens upon interstate commerce. In *Minnesota Rate Cases* [*Simpson* v. *Shepard*], 230 U. S. 352, 396, 33 S. Ct. 729, 739 (57 L. Ed. 1511, 48 L. R. A. (n. s.), 1151, Ann. Cas. 1916A, 18), Mr. Justice Hughes, speaking for the court, said: 'If a state enactment imposes a direct burden upon interstate commerce, it must fall, regardless of federal legislation. The point of such an objection is not that Congress has acted, but that the state has directly restrained that which in the absence of federal regulation should be free.' The question is so fully discussed in that case, that nothing beyond its citation is required."

It is well settled that license taxes of this kind, which impose burdens upon interstate commerce, are void as in conflict with the interstate commerce clause (Art. I. sec. 8) of the Constitution of the United States. (*Eureka Pipe Line Co.* v. *Hallanan,* 257 U. S. 265, 42 S. Ct. 101, 66 L. Ed. 227; *Ozark Pipe Line*

*Corporation* v. *Monier,* 266 U. S. 555, 45 S. Ct. 184, 69 L. Ed. 439; *State Tax Commission* v. *Interstate Natural Gas Co.,* 284 U. S. 41, 52 S. Ct. 62, 76 L. Ed. 156.)

It is unnecessary to consider the other constitutional provisions claimed to have been contravened by the Act.

The judgment of the trial court is affirmed.

ASSOCIATE JUSTICES ERICKSON, MORRIS, ANDERSON and ADAIR concur.