[No. 25684.  *En Banc.*  August 13, 1935.]

THE STATE OF WASHINGTON, *Appellant,* v. NORTHERN
PACIFIC RAILWAY COMPANY, *Respondent.*[1]

STEINERT and HOLCOMB, JJ., dissent.

[1]Reported in 48 P. (2d) 931.

*The Attorney General* and *R. G. Sharpe, Assistant,* for appellant.

*L. B. da Ponte* and *Robert S. MacFarlane,* for respondent.

Main, J.—This action was brought to recover the tax on the gross income of the defendant, imposed by chapter 191, Laws of 1933, p. 869 (Rem. 1933 Sup., § 8326-1 [P. C. § 7068-31] *et seq.),* for the months of August to December, 1933. The cause was tried to the court without a jury, and resulted in findings of fact from which the court concluded that the plaintiff was not entitled to recover. Judgment was entered dismissing the action, from which the plaintiff, the state of Washington, appeals.

The respondent owns and operates a system of railroad extending from a point on Lake Superior, Wisconsin, through Minnesota, North Dakota, Montana and Idaho, into and through a number of counties in this state, with branch lines into the state of Oregon and British Columbia. It is engaged in both intrastate and interstate commerce, carrying freight and passengers. As found by the trial court, the interstate and intrastate business in this state is inextricably commingled, and the intrastate business is conducted at a loss, and it is necessary to make up this loss from the income from interstate business.

Chapter 191 of the Laws of 1933 is entitled an act relating to taxation, and imposes taxes upon the privilege of engaging in business activities in this state. The amount of the tax is based upon the gross income. In § 2 of the act, it is provided that:

"From and after the first day of August, 1933, and until the thirty-first day of July, 1935, there is hereby levied and there shall be collected from every person an annual tax or excise for the privilege of engaging in business activities. Such tax or excise shall be

measured by the application of rates against values, gross proceeds of sales, or gross income, as the case may be, as follows: . . . (e) Upon every person engaging or continuing within this state in the following businesses; as to such persons the amount of tax or excise shall be equal to the gross income of the business multiplied by the rate set out after the business, as follows: . . . III. Steam railways: one and one-half per cent; . . ." Rem. 1933 Sup., § 8326-2 [P. C. § 7068-32].

It is under this act that the tax in question was sought to be collected by the state and which was resisted by the respondent railway company, as above indicated.

The first question is whether the legislature intended to levy the tax upon the gross income of the respondent, derived from both interstate and intrastate commerce. In the portion of the act quoted, it will be observed that it is provided that the tax is levied upon every person "engaging or continuing within this state in the following businesses." This quoted expression is used, not only in referring to the tax upon steam railways, but upon the other businesses mentioned in the act which are purely of a local nature. If it was the legislative intent to levy the tax upon the gross income from interstate commerce, it would necessarily to that extent be unconstitutional as being repugnant to the commerce clause of the Federal constitution. About this there can be no question, as it has been many times so held by the Federal supreme court.

In *State v. Northern Express Co.*, 80 Wash. 309, 141 Pac. 757, there was involved an act of the legislature which imposed upon express companies a privilege tax of five per cent, based upon the gross receipts of such companies. In that case, the expression used was that the tax was imposed for the privilege of

"doing business in this state" or on "business done within the state of Washington." It was there held that the expressions used had reference to business begun and ended within this state, and that the tax, being upon intrastate commerce only, did not place a burden upon interstate commerce. It was there said:

"The phrase 'gross receipts of such express company for business done within the state of Washington,' to which the tax is alone applicable, is an expression of the legislative intent to limit this tax to business wholly within this state; that is, business begun and ended within this state."

It will be observed that, there, the expression was business done within this state or within the state of Washington. In the case we are now considering, the expression is "engaging or continuing within this state" in business. It is probably true that the expression used which was involved in the case cited more clearly indicates a legislative intent not to impose the tax upon interstate commerce than does the expression used in chapter 191, Laws of 1933. However this may be, when we read the expression used in that chapter, not only as applied to a business which is both interstate and intrastate, but its repeated application to businesses which are purely local, it would seem that the legislative intent was reasonably plain, and that the purpose was not to impose the tax upon interstate business, but upon intrastate or local business only.

If it be that the expression used leaves the matter in the zone of doubt, then that doubt should be resolved in favor of the constitutionality of the law. In such a case, the construction will be adopted which will harmonize the statute with the constitution and avoid a conflict therewith. *Robb v. Tacoma,* 175 Wash. 580, 28 P. (2d) 327, 91 A. L. R. 1010.

That a state, through its legislature, has no power

to levy a tax which would be a direct burden upon interstate commerce, is well known and understood by all lawyers and many laymen. For the court to hold that the legislature, in enacting chapter 191, intended to impose the excise tax therein provided for for the privilege of doing interstate business in this state, would be too great a reflection upon the intelligence of the members of a coordinate branch of the state government. The act, as we view it, was only intended to apply to local or intrastate business.

The next and, as we view it, the important and difficult question is whether the tax may be collected, even though the railway company, the respondent, may not be able to retire from its intrastate business without also discontinuing its interstate. In this connection, it will be assumed (a) that the respondent cannot, as a matter of law, retire from its intrastate business; (b) that it is impractical, as a matter of fact, for it to retire from its intrastate business without also retiring from its interstate; and (c) that the intrastate or local business is conducted at a loss which is taken care of by the receipts from the interstate business. Giving effect to these assumptions, inquiry must be directed then to whether the tax is valid, even though the railway company may not be able to retire from its intrastate business without retiring from its interstate, and that the intrastate business is conducted at a loss.

In the case of *Sprout v. South Bend,* 277 U. S. 163, 48 S. Ct. 502, 62 A. L. R. 45, the court had before it an ordinance of the city, in the state of Indiana, which prescribed license fees varying in amount depending upon the seating capacity of a bus, the bus company being engaged in both intrastate and interstate business, and it was there held that "the ordinance is void because of the imposition of the license fee." In the

course of the opinion, it was said that a state may, by appropriate legislation, require the payment of an occupation tax from one engaged in both intrastate and interstate commerce, but, in order that the fee or tax may be valid,

" . . . it must appear that it is imposed solely on account of the intrastate business; that the amount exacted is not increased because of the interstate business done; that one engaged exclusively in interstate commerce would not be subject to the imposition; and that the person taxed could discontinue the intrastate business without withdrawing also from the interstate business."

It will be observed that one of the conditions there placed upon the right of a state to impose the tax is that the person or corporation taxed "could discontinue the intrastate business without withdrawing also from the interstate business." That principle, so far as we are informed, was first applied in the case of *Pullman Co. v. Adams,* 189 U. S. 420, 23 S. Ct. 494, where the tax involved was in a specific amount, levied upon

" . . . each sleeping and palace-car company carrying passengers from one point to another within the State, one hundred dollars, and twenty-five cents per mile for each mile of railroad-track over which the company runs its cars."

In the case of *Cooney v. Mountain States Tel. & Tel. Co.,* 294 U. S. 384, 55 S. Ct. 477, there was involved a statute of the state of Montana prescribing a tax "for each telephone instrument used in the conduct of the business of operating or maintaining telephone lines and furnishing telephone service in the State of Montana." There, the telephone company, as is the railroad company here, engaged in both intrastate and interstate business, and it was held that a privilege or occupation tax which a state imposes with reference to

both kinds of business, through an indiscriminate "application to instrumentalities common to both sorts of commerce, has frequently been held to be invalid."

It will be observed that in none of the three cases mentioned was the tax based upon the gross income of the intrastate business. There is a difference between a tax imposed as a license to do business or upon the instrumentality and a tax based upon the gross income. If the tax be a license tax or one upon the instrumentality, it necessarily inheres in the interstate as well as the intrastate business. Where the tax is upon the gross income, the income from the interstate business may be segregated from the intrastate and the tax be held valid.

In the case of *Bowman v. Continental Oil Co.*, 256 U. S. 642, 41 S. Ct. 606, the state of New Mexico had imposed an excise tax of two cents for each gallon of gasoline sold or used, and an annual license tax of fifty dollars for each distributing station or place of business. The oil company was engaged in both interstate and intrastate business. It was held that the two cents tax per gallon could be sustained because the income from the intrastate business could be segregated from the interstate, but that the fifty dollar tax was void because no such segregation could be made. It was there said:

"The applicable rule is that laid down in *Ratterman v. Western Union Telegraph Co.*, 127 U. S. 411, where, in response to a question whether a single tax, assessed by a state upon the receipts of a telegraph company derived partly from interstate commerce and partly from commerce within the State, but returned and assessed in gross and without separation or apportionment, was wholly invalid or invalid only in proportion and to the extent that the receipts were derived from interstate commerce, this court unanimously answered that so far as levied upon receipts derived from interstate commerce the tax was void, but so far as levied

upon receipts from commerce wholly within the State it was valid. This case has been cited repeatedly with approval and its principle accepted. *Western Union Telegraph Co. v. Alabama,* 132 U. S. 472, 476-477; *Lehigh Valley R. R. Co. v. Pennsylvania,* 145 U. S. 192, 200-201; *Postal Telegraph Cable Co. v. Charleston,* 153 U. S. 692, 697; *Western Union Telegraph Co. v. Kansas,* 216 U. S. 1, 31.

"But with the license tax it is otherwise. If the statute is inseparable, then both by its terms and by its legal operation and effect this tax is imposed generally upon the entire business conducted, including interstate commerce as well as domestic; and the tax is void under the authority of *Leloup v. Port of Mobile,* 127 U. S. 640, 647; *Crutcher v. Kentucky,* 141 U. S. 47, 58-59; *Williams v. Talladega,* 226 U. S. 404, 419; and other cases of that character."

In the case of *Cooney v. Mountain States Tel. & Tel. Co., supra,* it was distinctly pointed out that the tax there involved was

". . . not laid on revenue derived from monthly rates as distinguished from toll charges. It is not imposed with respect either to the nature of the revenue, or to the character of the service from which the revenue is derived, or to the manner in which the charges for the service are fixed."

From what is there said, it would appear to be a reasonable inference that, if the tax were of the character described in the quotation just made from the opinion, the result might be different.

In *East Ohio Gas Co. v. Tax Commission,* 283 U. S. 465, 51 S. Ct. 499, the state of Ohio imposed upon every corporation engaged in the business of supplying consumers within the state with natural gas for light, heat or power a tax based upon the gross receipts, and the law was sustained. The East Ohio Gas Company, which resisted the tax, was engaged both in interstate and intrastate business. It brought gas from the states of West Virginia and Pennsylvania over high

pressure pipes, and, as stated in the opinion, this was interstate commerce until it reached the distributing pipes which supplied the consumers, and after that it became intrastate and was subject to the tax. In the course of the opinion in that case, we find the same statement with reference to the conditions precedent to the right of a state to impose a tax upon a person or corporation engaged in both intrastate and interstate business, as appears in the quotation from the case of *Sprout v. South Bend, supra*. In the *Ohio Gas Co.* case, however, the court did not apply the provision that the gas company could not retire from its intrastate business without withdrawing from its interstate business. The facts, as they appear in the opinion, make it plain that, if the gas company had withdrawn from its intrastate business, it would have completely destroyed its interstate business. The tax there involved was not one upon the instrumentality or a license tax, but was an excise or a tax upon the privilege of doing business.

The result of the holding in that case, as we view it, would sustain a holding in the case now before us that the tax upon the gross income of the intrastate business was valid, even though the railway company could not withdraw from that business without also withdrawing from its interstate business. We do not look upon cases which involve either a tax upon instrumentalities or a license tax as applicable to the law now in question, which imposes, as already indicated, an excise or tax on the privilege of engaging or continuing in business.

It must be remembered that chapter 191 of the Laws of 1933 applies to every person engaging or continuing in business within this state, with a comparatively few exceptions. The law may be said to be a general one and applies to all businesses within the

state. In this respect, it is somewhat analogous to a property tax which all persons, with comparatively few exceptions provided for in the statute, are required to pay upon the property owned by them. The state has the authority to tax property which is used in interstate commerce and which is regularly and permanently located within its limits, where the ascertainment of the amount assessed is dependent upon the value of the property within the state, as the property of other citizens is taxed. *Leloup v. Port of Mobile,* 127 U. S. 640, 8 S. Ct. 1380; *Western Union Telegraph Co. v. Kansas,* 216 U. S. 1, 30 S. Ct. 190.

Even though the respondent in this case cannot retire from its intrastate business without also retiring from its interstate business, we think that the excise tax imposed upon the gross income from the intrastate business is not such a direct burden upon interstate commerce as to require that the tax be held void.

Attention at this point should be called to chapter 4 of the Laws of 1933, p. 47, Rem. 1933 Sup., § 11238-1 [P. C. § 6882-77a], which was initiative measure 64, and generally referred to as the ''40-mill tax limit for taxation'' law. In that act, it was provided that the aggregate of all taxes upon real and personal property in the state should not exceed in any one year forty mills on the dollar of assessment valuation, which should be based upon fifty per cent of the true and fair value of the property in money, with some exceptions which are not here material. The respondent, by reason of this law, has been relieved from paying a very large sum of money as taxes upon the property which it owns in this state and which was subject to taxation, even though devoted to interstate commerce. It is a matter of common knowledge that, under the 40-mill tax limit law, property is now paying about half of what it paid for general taxes prior to the

passage of that law; in other words, that, by reason of the law limiting the amount to forty mills, the tax burden upon both real and personal property of the state has been reduced approximately one-half. Having thus provided for a reduction of taxes upon real and personal property, it was necessary for the legislature to find other sources of revenue, and chapter 191 was undoubtedly passed for this reason.

So far as we are informed, the Federal supreme court has at no time distinctly held that an excise tax, such as that of this state, which is imposed upon all businesses, is such a direct burden upon interstate commerce as to render the act of the legislature unconstitutional.

But it is said that the intrastate business is being conducted at a loss, and this loss must be borne by the interstate business and therefore is a burden upon interstate commerce. There is an expression in the case of *Postal Telegraph-Cable Co. v. Richmond,* 249 U. S. 252, 39 S. Ct. 265, that would appear to support this contention, even though the question was not necessarily involved in that case; and further, in that case there was not involved an excise tax based upon gross income, as here.

In this state, if the respondent's intrastate business is conducted at a loss, the legislature has provided a remedy, first, by application to the department of public service, with the right of review by the superior court and an appeal to this court. From the findings, it appears that an application has been made and denied by the department, and that another application is pending. It does not appear, however, that the respondent has exhausted the relief granted by the statute, and until it does so, it cannot be said that, even though the intrastate business is being conducted at a

loss, it is such a burden upon interstate commerce as would justify holding the law unconstitutional.

The facts in the case of *Postal Telegraph-Cable Co. v. Fremont,* 255 U. S. 124, 41 S. Ct. 279, presented a similar question, and it was there held that, where the state law affords a means to prevent the tax from burdening interstate commerce, through an application to increase intrastate rates, the tax will not be held void, in the absence of a showing that the company had exhausted the remedy afforded by an increase of the rates on intrastate business. We see no just or legal reason why the respondent should not comply with chapter 191, as all other businesses in this state are required to do.

So far as the opinion in the case of *Great Northern R. Co. v. State,* 147 Wash. 630, 267 Pac. 506, is out of harmony with the holding in this case, it will be disapproved.

The trial court in finding No. 4 specifically found the gross revenue from the respondent's intrastate business and the tax thereon for the period covered by this action. The appellant is entitled to a judgment for the amount as indicated in the finding.

The judgment appealed from will be reversed and the cause remanded, with directions to the superior court to enter a judgment as herein indicated.

MITCHELL, TOLMAN, BLAKE, BEALS, and GERAGHTY, JJ., concur.

STEINERT, J. (dissenting)—I do not agree with the majority upon what is said to be the principal question in the case. Having conceded (a) that the respondent cannot, as a matter of law, retire from its intrastate business, (b) that it is impracticable, as a matter of fact, to so retire without also retiring from its interstate business, and (c) that the intrastate, or local,

business is conducted at a loss which is taken care of by the receipts from the interstate business, the majority arrives at a conclusion which I think is incorrect and untenable.

The authorities cited in the prevailing opinion establish beyond question, as I view it, that the state may not impose a tax, no matter what its nature or variety may be, that has the effect of burdening or interfering with interstate commerce.

In *Bowman v. Continental Oil Co.*, 256 U. S. 642, 41 S. Ct. 606, the court said:

"No doubt the state might impose a license tax upon the distribution and sale of gasoline in domestic commerce if it did not make its payment a condition of carrying on interstate or foreign commerce. But the state has not done this by any act of legislation. Its executive and administrative officials have disavowed a purpose to exact payment of the license tax for the privilege of carrying on interstate commerce. But the difficulty is that, since plaintiff, so far as appears, necessarily conducts its interstate and domestic commerce in gasoline indiscriminately at the same stations and by the same agencies, the license tax cannot be enforced at all without interfering with interstate commerce unless it be enforced otherwise than as prescribed by the statute—that is to say, without authority of law. Hence, it cannot be enforced at all."

In *East Ohio Gas Co. v. Tax Commission*, 283 U. S. 465, 51 S. Ct. 499, the court said:

"And, while a State may require payment of an occupation tax by one engaged in both intrastate and interstate commerce, the exaction in order to be valid must be imposed solely on account of the intrastate business without enhancement because of the interstate business done, and it must appear that one engaged exclusively in interstate business would not be subject to the imposition and that the taxpayer could discontinue the intrastate business without withdrawing also from the interstate business."

46

In *Cooney v. Mountain States Tel. & Tel. Co.*, 294 U. S. 384, 55 S. Ct. Rep. 477, 482, the court, through Chief Justice Hughes, said:

"Where the tax is exacted from one doing both an interstate and intrastate business, it must appear that it is imposed solely on account of the latter; that the amount exacted is not increased because of the interstate business done; that one engaged exclusively in interstate commerce would not be subject to the tax; and that the one who is taxed could discontinue the intrastate business without also withdrawing from the interstate business. *Sprout v. South Bend, Ind.*, 277 U. S. 163, 171, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45; *East Ohio Gas Co. v. Tax Commission*, 283 U. S. 465, 470, 51 S. Ct. 499, 75 L. Ed. 1171."

The other cases cited in the prevailing opinion are either directly or argumentatively to the same effect. Under these cases, one of the essentials to the validity of a tax is that the one who is taxed could discontinue its intrastate business without also withdrawing from its interstate business.

The majority seek to make a distinction between a tax imposed as a license to do business or one upon the instrumentalities used, and a tax on gross income. They concede that a license tax to do business or a tax upon the instrumentality inheres in the interstate as well as in the intrastate business, but they hold that, "where the tax is upon the gross income, the income from the interstate business may be segregated from the intrastate and be held valid." The distinction is without substance when the result in a given instance is to burden or interfere with interstate commerce. The Federal government having created a field within its exclusive regulatory jurisdiction, the state may not invade it, nor by any act, direct or indirect, interfere with it.

We have before us four cases, including the instant one, involving the same question. The other three are

*State v. Great Northern R. Co., post* p. 698, *Pacific Tel. & Tel. Co. v. State Tax Commission, post* p. 697, and *Home Tel. & Tel. Co. v. State Tax Commission, post* p. 698. The questions being identical in all four, the same barrier exists in each against the state's right to tax.

That the action of the state will interfere with interstate commerce is, to me, very apparent. If the railroad companies or the telephone companies should be permitted or be compelled to withdraw from their intrastate business, how many trains would continue to run, and how many telephones would remain in place, in this state, merely for the purpose of enabling their users to do an interstate business? Not only would all local service be discontinued, but, with the exception, possibly, of one or two large cities, the people of the state would be without interstate service as well.

If, as a matter of law, the companies may not withdraw from intrastate business, or if, as a matter of fact, it is wholly impracticable for them to do so, then such intrastate business must continue to be operated at the expense of their interstate business. If one state be permitted to impose burdens upon interstate commerce through the medium of taxation, then all states in which the companies operate may do likewise, and the accumulated burdens thus imposed would in the end result in complete strangulation of all their interstate commerce. The sum and substance of it all is that the tax imposed on intrastate business must be borne by the proceeds from interstate business. It is, therefore, a burden upon, and interferes with, interstate commerce, and for that reason is invalid.

I therefore dissent.

HOLCOMB, J. (dissenting)—I concur in the views stated by Judge Steinert in the above entitled case and as to all the other like cases now pending in this court.

I wish to add, however, that I particularly deplore the indefinite, unnecessary and summary disposition of the case of *Great Northern R. Co. v. State,* 147 Wash. 630, 267 Pac. 506. It leaves that case like Mahomet's coffin, suspended midway between Heaven and earth; and, as Mr. Justice Holmes once said in one of his famous dissenting opinions, henceforth, neither bench nor bar can tell whether certain cases alluded to in the majority opinion therein, in much the same way as is the above cited case in the prevailing opinion in these cases, "are to be listed in the *index expurgatorius*" or are in the category of cases to be used in the future at pleasure.

The above cited case was the deliberate judgment of this court *En Banc* and concurred in by all but two of the then judges on this bench, including the writer of the opinion in the instant case. It followed the decisions of the Federal supreme court therein cited. It was based upon the sound principle that a public utility, such as the railway company, the telephone company and the like, is compelled by law to serve and cannot withdraw. To the same effect is *Northern Pacific R. Co. v. State,* 84 Wash. 510, 147 Pac. 45, Ann. Cas. 1916E 1166.

It is manifest that these utilities cannot separate the receipts of their intrastate from their interstate business. If that be true, then it is indubitably true that the taxes in question are burdens upon interstate commerce, contravening the commerce clause and the fourteenth amendment of the Federal constitution, to which we are fully bound by oath to conform.