[Nos. 26238, 26239. *En Banc.* January 6, 1937.]

THE STATE OF WASHINGTON, *Appellant,* v. NORTHERN PACIFIC RAILWAY COMPANY, *Respondent.*

THE STATE OF WASHINGTON, *Appellant,* v. GREAT NORTHERN RAILWAY COMPANY, *Respondent.*[1]

[1]Reported in 65 P. (2d) 1061.

*The Attorney General* and *R. G. Sharpe, Assistant,* for appellant.

*Thomas Balmer, Edwin C. Matthias, L. B. daPonte, Robert S. Macfarlane,* and *Dean H. Eastman,* for respondents.

MILLARD, C. J.—Plaintiff appeals from the refusal of the trial court to allow interest on the amount recovered in the judgment for plaintiff in its action against the Great Northern Railway Company and the amount recovered in the judgment in the action of plaintiff against the Northern Pacific Railway Company, the purpose of each action being to recover the occupation tax imposed under the provisions of chapter 191, Laws of 1933, p. 869, upon the privilege of engaging in business. The trial court found the amount of the occupation tax due from each of the companies for each of the months August to December, 1933, inclusive, to be as follows:

| Month for Which Tax Payable | N. P. Ry. Co. | G. N. Ry. Co. |
|---|---|---|
| August, 1933 | $7,540.34 | $2,523.85 |
| September, 1933 | 7,594.69 | 2,844.39 |
| October, 1933 | 7,463.27 | 2,938.81 |
| November, 1933 | 7,956.98 | 2,919.24 |
| December, 1933 | 5,560.94 | 1,762.06 |
| Total | $36,116.22 | $12,988.35 |

While finding that the figures shown in the above table were the amounts of taxes for which the plaintiff would be entitled to a judgment, were it entitled to recover, the trial court adjudged the taxes void as to each defendant, and entered judgments dismissing the two actions. The appeal of the state to this court resulted in reversal of the judgments of the trial court and remand of the causes with directions to enter

judgment in favor of the state for the total amounts shown in the table above. *State v. Northern Pac. R. Co.*, 183 Wash. 33, 48 P. (2d) 931; *State v. Great Northern R. Co.*, 183 Wash. 698, 48 P. (2d) 938. No question as to what interest, if any, should be allowed plaintiff on the amount of taxes recovered was presented to, nor considered by this court, in those cases.

On September 10, 1935, the following stipulation was entered into in each of the causes:

"IT IS HEREBY STIPULATED AND AGREED by and between the respective parties hereto, that any judgment hereafter entered in the above cause by the above court in favor of plaintiff and against defendant, shall contain the following proviso:

" 'Provided, however, that the entry of said judgment shall be without prejudice to the right of plaintiff to the adjustment and correction of taxes payable by defendant for the months of August, 1933, to December, 1933, inclusive, as provided in Chapter 191, Laws of Washington for 1933.'

"IT IS FURTHER STIPULATED AND AGREED that the question of what interest, if any, defendant is required to pay, and plaintiff is entitled to, on the taxes found payable by defendant for the months of August, 1933, to December 1933, inclusive, was neither raised in the supreme court nor determined by said court in the judgment entered therein, and that such question is to be determined by the superior court on the entry of judgment pursuant to the remittitur from the supreme court."

On appeal to the United States supreme court, our judgment was affirmed on April 7, 1936.

On May 11, 1936, the trial court entered a judgment on the remittitur in each of the causes for the total amount of taxes for August to December, 1933, as shown in the table above, together with costs in the superior and supreme courts, but plaintiff was not awarded interest on the taxes adjudged to be due.

The judgment in each case recites that the judgment was reversed and remanded with directions to enter judgment in favor of the state and against the railway company (stating the amount)—

" . . . and it having been stipulated in open court that any judgment recovered by plaintiff should be without prejudice to the right of either party to adjustment and correction by the state tax commission, as provided by Chapter 191, Laws of 1933, and it having been further stipulated that the question of what interest, if any, defendant is required to pay and plaintiff is entitled to collect on the taxes found payable by defendant for the months of August to December, 1933, inclusive, was neither raised in the supreme court nor determined by said court in the judgment entered therein, and that such question is to be determined by the superior court on the entry of judgment pursuant to the remittitur from said supreme court.

"Now, THEREFORE, pursuant to the remittitur from said supreme court and the stipulations made as aforesaid, IT IS HEREBY ORDERED, ADJUDGED and DECREED that the plaintiff, state of Washington, do have and recover of and from the defendant,

" . . . PROVIDED, however, that the entry of this judgment shall be without prejudice to adjustment and correction by the state tax commission of the taxes payable by defendant for said months of August to December, 1933, inclusive, as provided by Chapter 191, Laws of Washington for 1933."

The appeal in each cause is from that portion of the judgment refusing to allow interest. The causes are consolidated, as the same question is presented in each appeal.

Appellant contends that it should have been awarded interest, commencing thirty days after the date the tax accrued, at the rate of twelve or six per centum per annum, on each of the monthly amounts listed above. It is further insisted that, in any event, appellant is entitled to interest on each of the judgments at the

rate of six per centum per annum from the date the original judgments were entered—from March 25, 1935, in the *Northern Pac. R. Co.* case, and from April 1, 1935, in the *Great Northern R. Co.* case.

The provisions of chapter 191, Laws of 1933, p. 869, upon which appellant relies, are quoted as follows:

"Sec. 6. The taxes imposed hereunder shall be due and payable in monthly installments on or before the fifteenth day of the month next succeeding the month in which the tax accrued. The taxpayer, on or before said fifteenth day of the month, shall make out a return, upon such forms and setting forth such information as the tax commission may require, showing his estimate of the amount of the tax for which he is liable for the preceding month, sign and transmit the same to the tax commission, together with a remittance for said amount in the form required by section 20 of this act. . . .

"Sec. 10. If any person shall fail or refuse to make any return required by this act, the tax commission shall proceed, in such manner as it may deem best, to obtain facts and information on which to base the assessment of the tax herein prescribed; . . .

"As soon as the tax commission shall procure such facts and information as it is able to obtain upon which to base the assessment of any tax payable by any person who has failed or refused to make a return, the commission shall proceed to determine and assess the tax against such person but such action shall not deprive such person from appealing to the superior court as hereinafter provided. To such tax the commission may add a penalty of ten per cent thereof for failure or refusal to make a return and likewise shall add a further penalty of one per cent per month of the amount of the tax for each thirty days or portion thereof from the date upon which the tax was due as provided by this act, and shall notify such taxpayer by mail of the total amount of such tax and added penalties and such total amount shall become due and shall be paid within ten days after the date of such notice.

"Sec. 15. If any tax, increase or penalty imposed by

this act or any portion of such tax, increase or penalty be not paid within fifteen days after the same shall become due, the tax commission shall issue a warrant under its official seal directed to the sheriff of any county of the state commanding him to levy upon and sell the real and/or personal property of the taxpayer found within his county, or so much thereof as may be necessary, for the payment of the amount of such warrant, together with a further penalty of one per cent of the amount of the tax as determined by the tax commission for each thirty days or portion thereof after the date of such warrant, plus the cost of executing said warrant, and return such warrant to the tax commission and pay to it the money collected by virtue thereof within sixty days after the receipt of such warrant. . . .

"Sec. 16. Any tax due and unpaid under this act and all increases and penalties thereon shall constitute a debt due the State of Washington and may be collected by court proceedings in the same manner as any other debt in like amount, which remedy shall be in addition to any and all other existing remedies. . . ."

It is unnecessary to review the argument of counsel for the state that the unpaid taxes bear interest at twelve per centum or six per centum per annum from the fifteenth day of the month succeeding the month in which the tax accrued, or to unnecessarily extend this opinion to disclose careful consideration of the contention of counsel for appellant to the effect that the respondents are liable for legal interest on delinquent taxes, even though the statute is silent as to interest.

An interesting argument is made that the state is entitled to legal interest at least from the time the findings were entered. The difficulty with the state's position is that, under its stipulation, interest may not be charged on the tax, because the amount due has not been finally determined.

Chapter 191 of the Session Laws of 1933 became

effective March 21, 1933. An action was commenced in the United States district court, western district of Washington, southern division, by respondents and others to enjoin enforcement of chapter 191 *(Chicago M. St. P. & P. R. Co. v. Hedges,* 5 Fed. Supp. 752). We do not know when that action was filed. However, the opinion on the motion for interlocutory injunction bears date of December 14, 1933, which shows respondent promptly acted to test the validity of the act. The cases at bar were filed in the superior court in February, 1934. It is not disputed that the returns required by § 6, chapter 191, Laws of 1933, p. 880, were made twelve days subsequent to the filing of the state's complaint against the respondents, which returns were filed under protest. The appellant did not proceed under § 10, chapter 191, Laws of 1933, p. 883, to determine the amount of the tax, as that section provides where no return is made. The tax commission instituted the two actions to determine the amount of taxes in the first instance and for judgment therefor. It is clear that the parties to the two actions recognized the principal purpose of the actions was to determine the constitutionality of chapter 191, and that the court's declaration that the statute was invalid would obviate the necessity of determination of the amount of the tax.

Appellant's disinclination to go into the question of the amount of the tax is disclosed in a number of the places in the statement of facts. The agreement that the amount of the tax would not be determined until later is definitely stated at pages 516 *et seq.* of the statement of facts in Cause No. 25684 (the *Northern Pac. R. Co.* case), which is applicable to both cases. The statement reads as follows:

"MR. SHARPE: Your Honor, Mr. daPonte is here this morning representing the Northern Pacific, and I

would like an understanding in regard to what will be done in the event the Court holds that the tax is properly imposable for some amount as against the Northern Pacific. As I understood the Court, if the Court decides that the corporation is taxable, he will then have a supplemental hearing for the purpose of determining the taxable items. If that is the understanding, I want to have it definitely understood. There is a question involved and one issue of the case is as to whether or not these shipments for export are intra or interstate business. I did not meet that in my testimony for the reason that I understood if it was a question of the taxability of this corporation, that question would be retried in regard to what constituted taxable items. If that isn't the clear understanding I would like an opportunity to call witnesses upon that subject. That is all I can say. That is as I understood the understanding of counsel and the Court. THE COURT: Well, there was something said to that effect back when we argued some of the preliminary things. MR. SHARPE: That was my understanding and if that is correct and agreed to by counsel, then I won't ask to reopen the case to put that in at this time. MR. DAPONTE: To put what in? MR. SHARPE: To meet your contention that the shipments for export are not local business, but constitute interstate business. MR. DAPONTE: That is purely a question of law. MR. SHARPE: Then I would want to show under what circumstances these shipments were made, of course, to determine whether or not they are, whether or not those things do constitute intra-state or interstate business. MR. DAPONTE: That is a question of law. The evidence is undisputed. MR. SHARPE: It is undisputed, yes, so far as you are concerned, at this time. MR. DAPONTE: I think you should have the evidence—what I did say was that there may be some more evidence, but I think the Great Northern case will throw more light on that, more particularly than ours. We haven't gone into it. MR. SHARPE: I think it would be much more desirable to have that taken up separately. MR. DAPONTE: So far as the record is now made, I think it is complete. I don't think Mr. Sharpe would controvert the evidence that has gone in on it

that this was business sent to ships for export at Seattle. It goes right out on the ships. It is identified on the face of it. MR. SHARPE: Well, that is a question. MR. DAPONTE: This isn't stuff that is sent to storage, anything of that kind, but is sent directly to ships. MR. SHARPE: Well, I want an opportunity to meet that. It means considerable to the state. MR. DAPONTE: You have had that opportunity for months. These interrogatories were handed to you months ago. MR. SHARPE: Yes, but there was confusion in regard to what procedure would be taken as to what constituted taxable items. I didn't introduce evidence upon it. MR. BALMER: Well, Your Honor, of course, I am not counsel in the Northern Pacific case but I assume that there might be some assumption that whatever Your Honor did in the Northern Pacific case wouldn't be followed in the Great Northern case in which the same question may arise. Now, I think this case is not primarily to determine what amount is due. It is a case to determine whether or not the tax as applied to these railroad companies is constitutional. That is the center of the case. The other question is purely subsidiary to it. If Your Honor should hold that the tax is void, then there will be no necessity of ascertaining to what part of the company's business it applies. It strikes me that this whole question can be taken care of by Your Honor providing, if you enter judgment to the fact that the tax is a valid tax. MR. SHARPE: And enter judgment for a certain amount. MR. BALMER: Yes, for a certain amount, that the determination of the amount due is without prejudice to the rights of either party to the adjustment which is contemplated in the occupational tax law at the end of the calendar year. MR. SHARPE: Well, that is perfectly satisfactory. THE COURT: That has been my understanding all the time. MR. DAPONTE: That is what I proposed in the first place. MR. SHARPE: Then, with that understanding, it will be satisfactory to leave the matter as it is, that is that the determination as to the amount of the tax will not be *res adjudicata* against the State. THE COURT: That has been my understanding all the time. MR. MACFARLANE: And, as Mr. Balmer has said, at the end of the taxable year the

122

adjustment will not be prejudiced by any judgment that may be entered in this case. MR. SHARPE: Well, that is all right.''

The understanding was incorporated into the findings in each case. Finding No. 4 in the *Great Northern R. Co.* case reads as follows:

''(4) Defendant's gross revenue from intrastate 'steam railway business' (on which the tax of 1½% is computed) for August to December, 1933, and the amount of the tax, are as follows:

| Month | Gross Revenue | Tax |
|---|---|---|
| August | $168,256.60 | $2,523.85 |
| September | 189,626.07 | 2,844.39 |
| October | 195,920.76 | 2,938.81 |
| November | 194,615.73 | 2,919.24 |
| December | 117,470.66 | 1,762.06 |
| Total | | $12,988.35 |

''These are the amounts shown in defendant's amended answers to plaintiff's interrogatories.

''It was stipulated in open court that if plaintiff be entitled to recover anything the judgment should be without prejudice to the right of either party to the adjustment and correction provided for by the Act. Subject to this stipulation the court finds that if plaintiff were entitled to recover anything in this cause, the amount would be the said sum of $12,988.35.''

After the case was decided by the supreme court of the United States, judgment was entered as quoted above, in which judgment is a recital to the effect that the entry of the judgment shall be without prejudice to adjustment and correction by the state tax commission of the taxes payable by the respondents for the months of August to December, 1933, inclusive, as provided by chapter 191, Laws of 1933. This is the judgment from which the state has appealed.

It must be conceded that there has not been a final determination—the stipulation so recites—of the

amount due to the state. The rule that interest does not run on any obligation until the amount due has been fixed needs no citation of sustaining authority.

It should also be borne in mind that, when respondents instituted an action in the United States district court raising the question of the validity of chapter 191, appellant secured a stay order and instituted actions against the respondents in the superior court. Such proceeding prevented payment by respondents of the tax except voluntarily. Such voluntary payment would have resulted in abatement of the test action in the United States district court and would also have resulted in loss of the money paid.

The stipulation quoted above postponed the question of amount until final determination of the validity of the tax, and it was further understood and agreed that, if chapter 191, Laws of 1933, were adjudged valid, further evidence would be offered to prove the amount of the tax due for the last five months of 1933. No such evidence has been offered.

Clearly, the trial court was right, and the judgment is affirmed.

STEINERT, GERAGHTY, MITCHELL, and HOLCOMB, JJ., concur.

TOLMAN, BEALS, BLAKE, and MAIN, JJ., dissent.

## ON REHEARING.

[*En Banc.* March 17, 1937.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the *En Banc* opinion heretofore filed herein.