IN RE APPEAL OF CITY OF DUBUQUE BRIDGE COMMISSION.

CITY OF DUBUQUE BRIDGE COMMISSION, Appellant, v. BOARD OF REVIEW OF THE CITY OF DUBUQUE, Appellee.

No. 46015.

AUGUST 11, 1942.

Smith & O'Connor, of Dubuque, for appellant.

John J. Kintzinger, of Dubuque, for appellee.

HALE, J.—There are two bridges at Dubuque, one which was at the time of the appeal herein under construction; the other has been in use for a number of years. The tax levied against the latter, the old bridge, is the one under considera-

tion here. For the purpose of the construction of a new bridge there was created what is known as the City of Dubuque Bridge Commission. The bridge was an interstate bridge and the Act of Congress creating the Commission is found in chapter 318, First Session of the Seventy-sixth Congress, 53 Stat. at L. 1051. The title of the act is, "An Act Creating the City of Dubuque Bridge Commission and authorizing said Commission and its successors to purchase and/or construct, maintain, and operate a bridge or bridges across the Mississippi River at or near Dubuque, Iowa, and East Dubuque, Illinois." The act was duly approved July 18, 1939, and was later amended to extend the time for commencement of construction and time for retirement of bonds, by Act of Congress, duly approved April 30, 1940. The statute under which the Commission operates may be summarized as follows:

Section 1 authorizes the construction of the bridge, and the purchase, reconstruction, maintenance, and operation of all or any existing bridges for vehicular traffic crossing the Mississippi River at or near Dubuque. Section 2 confers upon the Commission the right of eminent domain, and the authority to enter into agreement with the states of Iowa and Illinois, or any political subdivision thereof, with reference to use of any lands or property owned by them. Section 3 authorizes the Commission to charge tolls, subject to the approval of the secretary of war and in accord with law. Section 4 provides for the issuance of bonds to pay the cost of acquiring or constructing bridges, and gives the Commission authority to mortgage its property to secure the same. Section 5 provides terms and conditions for fixing rates of tolls. Section 6 provides that the Commission is not required to maintain or operate any bridges purchased by it until "if and when all bonds issued for account of such bridge or bridges shall have been retired or provision for the payment of interest on and retirement of such bonds from the revenues from any other bridge or bridges shall have been made at the time of issuance of such bonds." It also authorizes the Commission to abandon or dismantle any such bridges, subject to federal approval. Section 7 provides that when all bonds outstanding have been retired, the Commission may deliver deeds or other suitable instruments

of conveyance of the interest of the Commission in and to the bridge or bridges extending between the state of Iowa and the state of Illinois, that part of said bridge or bridges within Iowa to the state of Iowa or any municipality or agency thereof as may be authorized by or pursuant to law to accept the same. The same conditions apply to that part within Iowa, Illinois, and that part between Dubuque and Wisconsin. And it further provides that if the Iowa, Illinois, or Wisconsin interests as they are so designated, as the case may be, fail to accept, or are not authorized to accept, their respective portions of said bridge or bridges, then the Commission may deliver deeds or other suitable instruments of conveyance of said portions, to any other interest which may accept and may be authorized to accept the same, under the condition that the bridge or bridges shall thereafter be free of toll and be properly maintained, operated, and repaired by said interests to whom said conveyances are delivered; but if any of the interests shall not be authorized to accept or shall not accept the same under such conditions, then the bridge or bridges shall continue to be owned, maintained, operated, and repaired by the Commission as a free bridge until there is an acceptance of the interests of the various states. Section 8 creates the Commission and provides for the membership thereof. Section 9 of the act provides that the Commission shall have no capital stock or shares of interest or participation, and all revenues and receipts thereof shall be applied to the purposes specified in the act. It also provides for the compensation of the members of the Commission. Section 10 authorizes the Commission to enter into contracts with the highway departments of the respective states in the vicinity of Dubuque and to accept financial aid from such states. Section 11 provides that the obligations of the Commission shall not be personal liabilities of the commissioners. Section 12 provides that the bridge shall be constructed in accordance with specifications of highway bridges as adopted by the American Association of State Highway Officials. Section 13 deals with the subject of a state or city commission taking over the operation of the bridge. Section 14 provides that bridges constructed, acquired, and maintained shall be governed by the United States Bridge Act of March 23, 1906, 33

U. S. C., sections 491–498. Section 15 reserves the right to alter, amend, or repeal the act.

Under the powers conferred by this act, the Commission, having been appointed in conformity therewith, took over what is known as the old highway and vehicular bridge across the Mississippi River between Dubuque, Iowa, and East Dubuque, Illinois, with its western approach in the city of Dubuque, commencing on the Fourth Street Extension, and issued mortgage bonds in payment thereof to the amount of $475,000. That part of the bridge belonging to the City of Dubuque Bridge Commission and located in the state of Iowa was assessed for the year 1941 in the sum of $107,500. It was stipulated also that the real-estate consolidated levy in the city of Dubuque was 46 mills in 1940, and 45.2 mills in 1941, from which assessment there was a 5 per cent general reduction by order of the board of supervisors. Objection was made by the Commission to the levy of this tax against the old bridge, and on May 31, 1941, the Commission filed with the Board of Review for the City of Dubuque its complaint in writing against said assessment, asking that said property be exempt from taxation on the following grounds: 1. Said property is exempt from taxation under section 6944, subparagraph 1, Code of 1939, as said property is in essence federal and state property within the meaning of said section. 2. Said property is exempt from taxation by section 6944, subparagraph 2, Code of 1939, as said property is devoted to a public use and is not held for pecuniary profit. 3. Said property is exempt from taxation by section 6945, Code of 1939, inasmuch as this real estate is occupied as a public road. 4. The City of Dubuque Bridge Commission is a federal instrumentality and its property is, therefore, not subject to state taxation. 5. The state of Iowa and its political subdivisions are the beneficial and equitable owners of that portion of the bridge located in Iowa; the City of Dubuque Bridge Commission is merely the trustee for the benefit of the state of Iowa and its political subdivisions. When the bridge is paid for, it will be transferred to the state of Iowa, or the political subdivisions thereof as provided in section 7(a) of the Act of Congress creating the City of Dubuque Bridge Commission.

This appeal of the Commission to the Board of Review

was denied and thereupon the Commission appealed to the district court, praying the court to grant an exemption on appellant's property from taxation for the year 1941 and subsequent years, and for such proceedings as may be had in relation thereto as are provided by law and agreeable with equity. Bonds have been issued refunding the original $475,000 from the total amount of $2,800,000 which is secured by trust indenture pledging both the existing bridge and the new bridge and their revenues to the payment of same, which issue is now outstanding. The trust indenture limits expenditures for maintenance and upkeep, exclusive of taxes, to $36,000 per year. Among its proceedings, the Bridge Commission has contracted with the Iowa State Highway Commission whereby the state of Iowa is allocating $408,000, plus engineering expense, toward the cost of constructing the Iowa approach to the new bridge, and the same arrangement has been made with the highway department of Illinois for the Illinois approach.

The Act of Congress referred to and summarized above followed a previous act substantially the same except for certain provisions which met with executive disapproval, so that the present act was enacted in place of the former act which is more specifically referred to in another division hereof.

The objection was made to this application for exemption that the court and the Board of Review had no jurisdiction to grant an exemption, that the Dubuque Bridge Commission was not entitled to exemption under the Act of Congress and the fact that Congress failed to include the claims of exemption in the bill is an indication that the property should be taxed.

Hearing was had on the appeal in the district court of Dubuque county and on January 29, 1942, the court entered judgment and decree finding that the court had jurisdiction, as a court of equity, of the parties and subject matter involved, and that the bridge in question (the old bridge), located on certain described real estate and owned by the City of Dubuque Bridge Commission, is not immune from state taxation under the facts and law in this case, and that the assessment complained of was a lawful and valid assessment, and the appeal of the said City of Dubuque Bridge Commission was dismissed.

From such decree of the district court, the City of Dubuque Bridge Commission appeals to this court.

I. Some question was made in the district court as to the jurisdiction of that court over claims of nonliability for taxation. We think there is no question about the jurisdiction, but we will briefly consider the grounds of the objections made at such trial.

The statutes involved are Code sections 7132, 7134, and 7136, relating to appeals from the board of review and the manner thereof. Section 7134 reads, in part:

"Trial on appeal. The court shall hear the appeal in equity and determine anew all questions arising before the board *which relate to the liability of the property to assessment* or the amount thereof * * * " (Italics ours.)

Sections 7135 and 7136 relate to appeals by officers. The question of the right of appeal has often been before this court. We hold that the court had jurisdiction. See Spencer v. Wheaton, 14 Iowa 38; Macklot v. City of Davenport, 17 Iowa 379; Hubbard v. Board of Supervisors, 23 Iowa 130; Rood v. Board of Supervisors, 39 Iowa 444; Smith & Funck v. Osburn, 53 Iowa 474, 5 N. W. 681; Wangler Bros. v. Black Hawk County, 56 Iowa 384, 9 N. W. 314; Montis v. McQuiston, 107 Iowa 651, 78 N. W. 704; Des Moines Water Co. v. Hammill, 187 Iowa 949, 174 N. W. 772; Union Petroleum Co. v. Indian Petroleum Co., 192 Iowa 1373, 186 N. W. 439; Woodbine Sav. Bk. v. Tyler, 181 Iowa 1389, 162 N. W. 590; Griswold Land & Credit Co. v. County of Calhoun, 198 Iowa 1240, 1242, 201 N. W. 11.

II. Appellant argues as to the constitutionality of the act creating the City of Dubuque Bridge Commission as a constitutional exercise of congressional power. Appellee, Board of Review, does not dispute in argument that the act creating the Commission and prescribing its powers is constitutional. We have no doubt that this was a constitutional exercise of a power of Congress, but the conclusion drawn by appellant that Congress, having constitutionally created the corporation such as the one in question, has created a federal instrumentality not subject to state tax, does not necessarily follow.

III. The first act passed by Congress was the same as the present act except that it contained the following paragraph:

"The bridge or bridges purchased or constructed under the authority of the Act shall be deemed to be Federal instrumentalities for interstate commerce, the Postal Service, and military and other purposes authorized by the Government of the United States, and said bridge or bridges and the bonds issued in connection therewith and the income derived therefrom shall be exempt from all Federal, State, municipal, and local taxation."

On June 25, 1938, this act met with presidential disapproval on account of the inclusion of the quoted paragraph, the reason given in the veto message being the same as given in vetoing S. 3107, Seventy-fourth Congress, in 1936, that is, that there was no compelling reason for making publicly owned interstate bridges federal instrumentalities, and secondly, because relieving such bridges of all state and local taxation, in a majority of cases would result in loss of revenue by states and their political subdivisions, necessitating material curtailment of necessary activities or increased tax burdens. An additional reason was the exemption of federal taxation in the bill as presented.

After the first bill was thus disposed of, the provision which had met with disapproval was eliminated and the same bill without that clause was passed by Congress and approved on July 18, 1939.

With this history in mind, it is evident that Congress, in the passage of the present act, had no intention of declaring that the bridge should be exempt from taxation either directly or by designating it a government instrumentality. Appellant argues that the Commission is a federal instrumentality, and cites various cases, among them Graves v. People of the State of New York, 1939, 306 U. S. 466, 59 S. Ct. 595, 83 L. Ed. 927, 120 A. L. R. 1466. The only question concerned in the Graves case is whether the tax laid by the state upon the salary of an employee of a corporate instrumentality of the Federal Government imposes an unconstitutional burden upon that government. The court in that case considers the question of tax immunity

of either the state or Federal Government and their instrumentalities as resting upon an implied limitation on the taxing power of each, such as to forestall undue interference, through the exercise of that power, with the governmental activities of the other. The opinion reviews McCulloch v. Maryland, 4 Wheat. (U. S.) 316, 4 L. Ed. 579, and various other cases, and holds that when the National Government lawfully acts through a corporation which it owns and controls, those activities are governmental functions entitled to whatever tax immunity attaches to those functions when carried on by the government itself through its departments.

The trouble with the application of this case to the case at bar is that the Dubuque Bridge Commission is not a corporation which the United States owns and controls. The bridge is not a government-owned structure. In the Graves case, the Home Owners' Loan Corporation was created by Congress in 1933 (12 U. S. C., section 1461 et seq.), and in paragraph 4(a) thereof is declared to be a federal instrumentality, and by paragraph 4(b) its shares of stock are all to be government owned. The question with which the court was concerned was whether the tax laid by the state upon the salary of respondent, employed by a corporate instrumentality of the Federal Government, imposed an unconstitutional burden upon that government. Citing Helvering v. Gerhardt, 304 U. S. 405, 412, 58 S. Ct. 969, 82 L. Ed. 1427, 1432. In the Graves case Congress had granted immunity from taxation to the corporation as to bonds, capital, etc., but had given no intimation of its purpose to grant or withhold immunity of the salary of the corporation's employees. Following the Helvering case, the Graves case holds that the tax on salary is not a prohibited burden. In the present case and under the act in question here, Congress has not attempted to grant immunity and we are not concerned with whether it would have power to do so.

IV. Under division IV of appellant's argument, it asserts generally that the bridge owned by the City of Dubuque Bridge Commission is immune from state taxation under the Constitution of the United States. Its argument here is divided into several subdivisions. As to the nature of the immunity, it cites as the leading case McCulloch v. Maryland,

1819, 4 Wheat. (U. S.) 316, 4 L. Ed. 579. The substance of this well-known case is that Congress has the power to incorporate a bank and that the power of the Federal Government is supreme, but the state within which a branch bank may be established, cannot, without violating the constitution, tax that branch; further, that the state government has no right to tax any of the constitutional means employed by the Government of the Union to execute its constitutional powers. The states have no power, by taxation, or otherwise, to retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by Congress, to carry into effect the powers vested in the National Government. This principle does not extend to a tax paid by the real property of the Bank of the United States, in common with the other real property in a particular state, nor to a tax imposed on the proprietary interest which the citizens of that state may hold in this institution in common with other property of the same description throughout the state.

Appellant argues that this immunity arises out of necessity under the federal system, citing Indian Motorcycle Co. v. United States, 1931, 283 U. S. 570, 51 S. Ct. 601, 75 L. Ed. 1277, which holds that the instrumentalities, means, and operations whereby the United States exercises its governmental powers are exempt from taxation by the states, and the instrumentalities, means, and operations whereby the states exert the governmental powers belonging to them are exempt from taxation by the United States, by virtue of the principle implied from the independence of the national and state governments within their respective spheres, and from the provisions of the constitution which look to the maintenance of the dual system. The case further holds, in relation to the foregoing propositions, that the reasons underlying the principle mark the limits of its range. Thus, as to persons or corporations which serve as agencies of government, national or state, and also have private property or engage on their own account in business for gain, it is well settled that the principle does not extend to their private property or private business, but only to their operations or acts as such agencies.

In considering the foregoing case, assuming that the Bridge

Commission acts as an agency of the Government, it would further be necessary that through this agency the United States exercise its governmental powers, a proposition which we do not think the facts in this case establish. And, as indicated in Fox Film Corp. v. Doyal, 1932, 286 U. S. 123, 52 S. Ct. 546, 76 L. Ed. 1010, citing McCulloch v. Maryland, supra, this principle of immunity does not extend to anything lying outside of or beyond governmental functions and their exertion, and does not exist where no direct burden is laid upon the government instrumentality and there is only a remote, if any, influence upon the exercise of the functions of government.

■ Appellant further argues that this immunity applies to government corporations as well as to departments of government, and as authority cites Thomson v. Union Pacific Ry. Co., 1869, 9 Wall. (U. S.) 579, 19 L. Ed. 792, which we do not think supports appellant's general proposition. That the immunity may apply to a government corporation may be true, but the Thomson case holds that a railroad constructed under the direction and authority of Congress, for the uses and purposes of the United States, is not exempt from taxation under state authority ·in the absence of any legislation by Congress to that effect, and that a state corporation has no right to hold its property exempt from state taxation. In this case the court refused to extend the exemption established by the case of McCulloch v. Maryland beyond its terms. The exemption was refused, notwithstanding that the government had aided the grants and otherwise in the construction of the road.

In further support of the proposition that the government corporation may not be taxed, appellant cites Jaybird Mining Co. v. Weir, 1926, 271 U. S. 609, 46 S. Ct. 592, 70 L. Ed. 1112, decided by a divided court, wherein the broad statement was made that the Federal Government is independent of state control, and without congressional consent no federal agency or instrumentality can be taxed by state authority. But the rule was applied only to ore in the possession of a lessee, which was taken from restricted property of an Indian, leased by the government for development and from which the interests of the Indian had not been segregated.

Appellant again cites Graves v. People of the State of New

York, supra, which was decided March 27, 1939, and the nature of which has already been stated relative to the imposition by a state of a nondiscriminatory income tax, and the holding as to which was (1) that there was no immunity, as such tax does not place an unconstitutional burden on the Federal Government where Congress has not conferred on the salaries of the employees of such instrumentality an immunity from state taxation. It also holds (2) as every action of the Federal Government within its constitutional power is governmental action, all activities of government constitutionally authorized by Congress must stand on a parity with respect to their constitutional immunity from taxation; (3) when the National Government lawfully acts through a corporation which it owns and controls, those activities are governmental functions entitled to whatever tax immunity attaches to those functions when carried on by the government itself through its departments; (4) an intention on the part of Congress to confer on employees of a corporate instrumentality of government created by it immunity from state taxation of their salaries is not to be gathered by implication from the silence of the statute creating the instrumentality; (5) the silence of Congress, when it has authority to speak, may sometimes give rise to an implication as to the congressional purpose; and the nature and extent of that implication depends upon the nature of the congressional power and the effect of its exercise; (6) as respects the question whether the taxation of income which is compensation for services rendered to a state or the Federal Government lays an unconstitutional burden on such government, it is immaterial whether the taxed income be salary or some other form of compensation, or whether the taxpayer be an employee or an officer of either a state or the National Government or of its instrumentalities. This case expressly overrules certain former opinions, Buffington v. Day, 11 Wall. (U. S.) 113, 20 L. Ed. 122; People of the State of New York ex rel. Rogers v. Graves, 299 U. S. 401, 57 S. Ct. 269, 81 L. Ed. 306; and impliedly overrules Dobbins v. Commissioners of Erie County, 16 Pet. (U. S.) 435, 10 L. Ed. 1022; and Brush v. Commissioner of Internal Revenue, 300 U. S. 352, 57 S. Ct. 495, 81 L. Ed. 691, 108 A. L. R. 1428, so far as they recognize an implied constitutional immunity from

124

income taxation of the salaries of officers or employees of the national or a state government or their instrumentalities.

We have referred to the Graves case more fully since the effect of it was to limit extensions of the doctrine of McCulloch v. Maryland, but it was decided on the ground that the tax laid on the state by the Federal Government did not impose an unconstitutional burden upon that government. The reason for the tax immunity of either government has been heretofore referred to. Thus the theory of the Graves case is that there must be an interference with the governmental powers of the Federal Government before such immunity is claimed in the absence of a grant of immunity by congressional action.

 The second division of appellant's argument under this head is that property owned by a federal instrumentality engaged exclusively in the exercise of governmental functions not for private profit, is not subject to state taxation. Cited under this head are United States v. Coghlan, 1919, 261 F. 425; United States Shipping Board Emergency Fleet Corp. v. Delaware County, 1927, 3 Cir., Pa., 17 F. 2d 40; King County v. United States Shipping Board Emergency Fleet Corp., 1922, 9 Cir., Wash., 282 F. 950; United States Spruce Prod. Corp. v. Lincoln County, 1922, 285 F. 388; Clallam County v. United States, 1923, 263 U. S. 341, 44 S. Ct. 121, 68 L. Ed. 328; City of New Brunswick v. United States, 1928, 276 U. S. 547, 48 S. Ct. 371, 72 L. Ed. 693; and the Graves case, supra. None of these cases can apply to or support the position of the appellant in the case at bar, since all the property concerned in the litigation in each case, except the Graves case, consisted of property of the United States or of a corporation authorized by the United States and in which all the property was government owned.

 Appellant further argues that the property of the Bridge Commission is immune from Iowa real-estate tax even if the basis of immunity is a substantial burden upon or interference with governmental functions. We have examined the cases cited by the appellant: Union Pacific R. R. Co. v. Peniston, 1873, 18 Wall. (U. S.) 5, 21 L. Ed. 787; Graves v. People of the State of New York, supra; Indian Motorcycle Co. v. United States, supra; Western Union Telegraph Co. v. Texas,

1881, 105 U. S. 460, 26 L. Ed. 1067; and Williams v. City of Talladega, 1912, 226 U. S. 404, 33 S. Ct. 116, 57 L. Ed. 275, and we are satisfied that none of these cases support appellant's general proposition, and they do not apply, for the reason that under the facts in this case there is no substantial burden upon or interference with the governmental functions of the United States, and the only effect of state taxation would be the extension of the time of payment of the outstanding bonds issued by the Commission in payment of the new bridge. The holding of the cases generally indicates that the rule is that such immunity not expressly granted must be shown to be an interference with or burden upon the Federal Government, and, as stated, we do not think such burden or interference exists in the present case.

The next two subdivisions of appellant's argument relate to the distinction it makes between this and other classes of cases. Except as noted, we need refer to them no further nor cite cases, since appellant admits that the cases which he seeks to distinguish uphold the taxation of private property of corporations used both in the exercise of a privilege granted by the Federal Government and for private profit, and that private corporations and individuals engaged in activity for private profit, and only indirectly related to the exercise of governmental functions, are not clothed with the immunity. We may, however, refer to certain statements in the case of Henderson Bridge Co. v. Kentucky, 1896, 166 U. S. 150, 17 S. Ct. 532, 41 L. Ed. 953, as summarized by the headnotes in that case: (1) A state tax on the intangible property of a company chartered by that state and maintaining a bridge over a river on the state boundary is not an unconstitutional burden on interstate commerce, when the business carried on over the bridge is done by other persons and corporations which pay the bridge company tolls for the privilege of using the bridge; (2) the fact that a bridge over a navigable river between two states is made a post road by an Act of Congress which also regulates the height of the bridge and the width of the spans, does not interfere with the right of the state to impose taxes upon the bridge company. The case further holds that the declaration that such bridges should be regarded as post roads does not interfere with the right of the

state to impose taxes, citing Postal Telegraph Cable Co. v. Charleston, 153 U. S. 692, 14 S. Ct. 1094, 38 L. Ed. 871. It is evident that the contrary view would withdraw from the taxing power of the states nearly all the railroads and stage routes throughout the country.

Another case referred to by the appellant on the theory that it should be distinguished from the case at bar is Trinity-farm Constr. Co. v. Grosjean, 1934, 291 U. S. 466, 54 S. Ct. 469, 78 L. Ed. 918, which opinion concludes that if the payment of state taxes imposed on the property and operations of appellant affects the Federal Government at all, it at most gives rise to a burden which is consequential and remote and not to one that is necessary, immediate, or direct. We refer to this because we think that in the present case an interference with or burden upon the Federal Government and its operation does not appear, and this seems to be the uniform rule, that there must be some such interference or burden to warrant the immunity from local or state taxation. And further, under the same head, one of the cases cited by appellant is Federal Compress & Warehouse Co. v. McLean, 1934, 291 U. S. 17, 54 S. Ct. 267, 78 L. Ed. 622, where the state tax was assailed as a forbidden imposition upon a federal instrumentality and as infringing the commerce clause of the Federal Constitution, and the substance of the holding was that the enjoyment of a privilege conferred by either the national or a state government upon an individual, even though to promote some governmental policy, does not relieve him from the taxation by the other of his property or business used or carried on in the enjoyment of the profits or of the privilege derived from it, and that the mere extension of control over a business by the Federal Government does not withdraw it from a local tax which presents no obstacle to the execution of the national policy.

Helvering v. Gerhardt, 1938, 304 U. S. 405, 58 S. Ct. 969, 82 L. Ed. 1427, which case is followed and referred to in the Graves case, supra, is classed by the appellant as one which should be distinguished from the present case. We do not think that there is the distinction claimed therefor by the appellant. The Helvering case distinctly holds that the immunity of state instrumentalities from federal taxation does not embrace activi-

ties which are not essential to the preservation of state governments, even though the tax be collected from the state treasury, or cases in which a tax laid upon individuals affects the state only as the burden is passed on to it by the taxpayer, and the burden on the state is so speculative and uncertain that if an exemption should be allowed it would restrict the federal taxing power without affording any corresponding tangible protection to the state government. This was a tax sought to be levied by the Federal Government upon a state agency designed to construct and operate transportation and terminal facilities, but the principle involved is the same, that there must be substantial interference with the functions of the government creating such corporation.

The case of Metcalf & Eddy v. Mitchell, 1926, 269 U. S. 514, 46 S. Ct. 172, 70 L. Ed. 384, also mentioned by appellant as a case to be distinguished, was an income-tax case, and the court held that the limitation upon the taxing power of each government, so far as it affects the other, must receive a practical construction which permits both to function with the minimum of interference each with the other; and that limitation cannot be so varied or extended as seriously to impair either the taxing power of the government imposing the tax or the appropriate exercise of the functions of the government affected by it. Since the practical construction in the present case shows no interference with nor impairment of governmental activities of the other in order that the immunity to the taxation may be granted, the holding of the Metcalf & Eddy case would seem applicable here.

Under a third subdivision, appellant argues that the case at bar falls within the rule that immunity exists because the tax is laid on the exercise of governmental functions. We refer briefly to the authorities cited by appellant under this subdivision. Farmers & Mechanics Sav. Bk. v. State of Minnesota, 1914, 232 U. S. 516, 34 S. Ct. 354, 58 L. Ed. 706, denying the right of a state to tax bonds issued prior to the admission of Oklahoma as a state, on the theory that to tax these bonds would create a burden on the operations of the government; citing McCulloch v. Maryland. In Weston v. City Council of Charleston, 1829, 2 Pet. (U. S.) 449, 7 L. Ed. 481,

there was an attempt to tax all personal estates, including stock of the United States or other obligations, and the court held such ordinance unconstitutional as tending to burden, impede, if not arrest, the activities of the Federal Government. And in Panhandle Oil Co. v. State of Mississippi, 1928, 277 U. S. 218, 48 S. Ct. 451, 72 L. Ed. 857, 56 A. L. R. 583, the validity of taxation was again determined by the United States Supreme Court by the practical effect of enforcement in respect to sales of gasoline to the government, and it was held that the necessary operation of these enactments, when so construed, is directly to retard, impede and burden the exertion by the United States of its constitutional powers to operate the fleet and hospital.

Many cases have arisen on the question of immunity from taxation, either by the Federal Government on property claimed to belong to or be controlled by the state, or by the state as to property of the Federal Government.

Recent cases decided by the United States Supreme Court relating to the questions here in issue are Alabama v. King & Boozer, 314 U. S. 1, 62 S. Ct. 43, 86 L. Ed. 3, and Curry v. United States, 314 U. S. 14, 62 S. Ct. 48, 86 L. Ed. 9, both of which originated in Alabama, and were decided November 10, 1941. In the former case, the respondents, King & Boozer, sold lumber on the order of cost-plus-a-fixed-fee contractors for use by the latter in constructing an army camp for the United States. The question for decision was whether the Alabama sales tax, with which the seller is chargeable, but which he is required to collect from the buyer, infringes any constitutional immunity of the United States from state taxation. The court in its opinion states that Congress has declined to pass legislation immunizing from state taxation contractors under ''cost plus'' contracts for the construction of governmental projects. Consequently, the participants in the present transaction enjoy only such tax immunity as is afforded by the Constitution itself, and the court stated that it was not now concerned with the extent and the appropriate exercise of the power of Congress to free such transactions from state taxation of individuals in such circumstances that the economic burden of the tax is passed on to the National Government. And the holding of the court was

that the Constitution of the United States, unaided by congressional legislation, does not prohibit nondiscriminatory state taxation of contractors with the United States merely because the burden is passed on economically, by the terms of the contract or otherwise, as a part of the construction cost to the government. As supporting this opinion, the court cites various cases, including Metcalf & Eddy v. Mitchell, supra, Trinityfarm Constr. Co. v. Grosjean, supra, Helvering v. Gerhardt, supra, and Graves v. People of the State of New York, supra.

The second case holds to the same effect, that the Constitution of the United States, without implementation by congressional legislation, does not prohibit a tax upon government contractors because its burden is passed on economically, by the terms of the contract or otherwise, as a part of the construction cost to the government.

We have not undertaken to review all of the authorities but have referred to most, but not all, of those cited by the appellant. We find under the facts in this case nowhere any indication that the imposition of the tax in question upon the old bridge interferes with or puts a burden upon the operation or functions of the Federal Government.

That the bridge is or may be used by the Federal Government in common with individuals and corporations does not to our minds indicate a right to the immunity. If so, every interstate bridge or road would be so immune. That the Commission was created by Congress under its powers to regulate interstate commerce does not necessarily constitute a governmental function such as will be interfered with by the imposition of the tax. Nor does the fact that such tax may postpone for a time the final payment for the new bridge constitute a direct and material imposition of the tax on a governmental function. Appellant states, and it appears to be conceded, that the old bridge will be torn down and never operated as a toll-free structure, as is authorized by the Act of Congress, and that the unpaid cost of acquiring this bridge is added to the cost of constructing the new one, all of which is to be paid from tolls collected on the new structure. And appellant argues that since the old bridge is part of a congressionally authorized plan to have

a toll-free interstate bridge as soon as the cost of the project is paid, a tax which delays the accomplishment of that purpose is a material and substantial burden upon and interference with the governmental function. But we are not convinced that the mere delay which *may* arise, and which can only be estimated, is such an interference with a governmental function as would authorize its immunity from taxation. There is no substantial or direct interference in any way with the operation of the Federal Government, but only the possible indirect postponement of final payment, which we think is insufficient to grant the immunity which appellant asks. Such we think is the general purport of the Graves case and the Helvering case, and is in line with the trend of the decisions wherein the question of the authorization or denial of such immunity has been considered.

 V. Appellant urges that section 6944, Code of 1939, exempts the bridge from taxation as property of the United States. Appellant's assertion that the fact that the legal title is not in the name of United States of America does not disqualify the bridge from exemption may be granted. The mere name of the federal instrumentality or agency, if its property were such, would not matter if it is actually federal property, but the facts herein are that it is not such government property. We have previously discussed government instrumentalities and need not concern ourselves further therewith. This is not the property of the United States and therefore does not come within the exemption granted by Code section 6944 (1) to such property.

 VI. Although appellant argues in division V that the property in question is the property of the United States, it also argues as a reason for exemption under section 6944 (1), Code of 1939, that the state of Iowa is the beneficial owner of that part of the bridge located in this state. Again we should bear in mind that the tax in question herein is that levied upon the old bridge. This old bridge will not become the property of the state of Iowa, because it is to be dismantled upon the construction of the new bridge. Even as to the new bridge, it is not certain that the state of Iowa will accept, and the provision in the act creating the Commission contemplates that possibility, when it states ''but if the Iowa, Illinois, or Wisconsin interests [state

or subdivision], as the case may be, fail to accept, or are not authorized to accept, their respective portions of said bridge or bridges, then the Commission may deliver deeds, or other suitable instruments or conveyance of said portions, to any other interest which may accept * * * the same, under the condition that the bridge or bridges shall thereafter be free of toll and be properly maintained, operated, and repaired by said interests to whom said conveyances are delivered." 53 Stat. at L. 1054, section 7(a). Appellant cites Ellsworth College v. Emmet County, 156 Iowa 52, 58, 135 N. W. 594, 42 L. R. A., N. S., 530, to support its proposition that beneficial ownership determines the exempt status of property held in trust. But the question arises, "Whose beneficial ownership"?

Appellant states also in this connection that the acceptance of trust by the beneficiary is presumed, citing In re Estate of Richardson v. Richardson, 138 Iowa 668, 100 N. W. 797. It may be again suggested that the beneficial interest is not fixed or certain. Can anyone at this time say who is the ultimate beneficiary of this alleged trust? But appellant argues that the state of Iowa, through its highway commission, has contributed to the project and this indicates its acceptance. The facts are that the highway commission has allocated $408,000 to the construction of the Iowa approach to the new bridge and has agreed to maintain and repair the west approach of pier No. 17 (the new bridge), but it has not contributed to the bridge now sought to be taxed. Appellant also refers to People ex rel. Bear Mountain Hudson River Bridge Co. v. Diamond, 126 Misc. 239, 213 N. Y. S. 258 (affirmed, 222 App. Div. 756, 225 N. Y. S. 885). Under the laws of New York, this bridge on state lands reverted to the state after 30 years and was not taxable as realty. There was in that case a direct provision that the bridge, on state land, should certainly become state property, not a provision that it might do so. In the case at bar it seems certain that the part of the project taxed (the old bridge) will never become either the property of the state or any subdivision of the state.

VII. Finally, appellant states as a reason for exemption under section 6945, Code of 1939, that the bridge is real estate occupied as a road. Section 6945 is as follows:

· "Roads and drainage rights-of-way. Real estate occupied as a public road, and rights-of-way for established public levees and rights-of-way for established, open, public drainage improvements shall not be taxed."

Section 6953, Code of 1939, provides:

"What taxable. All other property, real or personal, is subject to taxation in the manner prescribed, and this section is also intended to embrace:

"1. Ferry franchises and toll bridges, which, for the purpose of this chapter are considered real property. * * *"

Appellant argues that section 63 of the Code, which states in paragraph 5 thereof that the words "highway" and "road" include public bridges and may be held equivalent to the words "county way," "county road," "common road," and "state road," determines the status of a bridge as a part of a public road. But section 63, presenting rules for the construction of statutes, states that such rules shall be observed "unless such construction would be inconsistent with the manifest intent of the general assembly, or repugnant to the context of the statute."

Here we have placed a general rule, with exceptions, for the construction of statutes, against a specific taxing statute. That the general rule may apply in most instances is true, but when the legislature specifically declares that toll bridges shall be taxed there is no reason or rule for construction. The intent of the legislature is manifest and the context of the taxing statute can mean but one thing, that toll bridges are to be taxed. Appellant argues this section does not apply to a publicly owned bridge, and that as a federal instrumentality it is a publicly owned bridge, and thus sections 6945 and 6953 must be so construed as to exempt publicly owned bridges and include for taxation privately owned bridges. We have already discussed federal instrumentalities. That the new bridge is publicly owned we doubt. The argument that the tolls collected are to be applied to a future public purpose we do not think will override the plainly expressed purpose of the legislature to make the structure taxable. Nor since the old bridge, the subject of the taxation in controversy, is never to become the property of the state,

nor of any subdivision, we know of no good reason, whether a road or otherwise, why it should not be taxed as a toll bridge, whatever the intended ultimate application of its revenues. If and when the new bridge becomes public property, there will then be time and opportunity to determine the question of taxation or immunity. Cases cited from other states and decided under other statutes are of little benefit. We hold that the mere fact that the bridge, as any toll bridge, is to be used as a highway, does not entitle it to exemption for that reason.

Our conclusion must be that since the Commission operates only under the authority granted by the act creating it, we must look to that act or to our Iowa statutes for any right to exemption from state or local taxation. Taxation is the rule, exemption the exception. We hold that the state law does not grant immunity. The history of the congressional legislation shows that the act was passed under circumstances not only not showing any intention or implication of exemption, but really showing the intention not to authorize such exemption from taxation. The property authorized to be purchased and held by the Commission is in no part contributed to by the Federal Government. Its revenue is derived from tolls. No burden on the Federal Government is created, and there is no substantial interference with governmental powers by the imposition of a tax as other like property is taxed. We must conclude and hold that the decree of the district court should be sustained and the ruling and decree of the district court is, therefore, affirmed.—Affirmed.

All JUSTICES concur.