**DALLAS COUNTY et al.**

v.

**TEXAS TURNPIKE CO. et al.**

No. 14844.

Court of Civil Appeals of Texas.

Dallas.

May 28, 1954.

Rehearing Denied June 7, 1954.

Henry Wade, Crim. Dist. Atty., Julien C. Hyer, J. J. Fagan and Rufus N. McKnight, Jr., Asst. Dist. Attys., H. P. Kucera, City Atty., Dallas, Charles P. Atkinson, Asst. City Atty., Fort Worth, A. J. Thuss, Jr., Dallas, Archie C. Price, Grand Prairie, John Ben Shepperd, Atty. Gen., and J. Milton Richardson, Asst. Atty. Gen., for appellants.

J. Edward Johnson, Johnson & Abney, Millard Parkhurst, McCall, Parkhurst & Crowe, and Roy G. Baker, Dallas, and Claude Gilmer, Rock Springs, for appellees.

Paul Carrington, R. G. Storey, J. Woodall Rodgers, Joe E. Estes, J. Glenn Turner and Gordon Simpson, Dallas, on amicus curiae suggestion for Dallas Chamber of Commerce.

DIXON, Chief Justice.

This is an appeal from a declaratory judgment. The trial court held that appellees, Texas Turnpike Company and Sam Houston Turnpike Corporation, both private corporations were exempt from the payment of City, county, school district, and state property taxes. The taxing units have appealed.

The Texas Turnpike Company, a private corporation, should not be confused with Texas Turnpike Authority, a government agency. The former, a private corporation, is one of two appellees here, who were plaintiffs in the trial court. The latter, a government agency, is not a party of record in this suit but must be taken into consideration and referred to in our study and discussion of the appeal.

The case is a consolidation of two suits, one brought by each of the appellees as plaintiff, in which suits they pray that their property be declared exempt from taxation. The defendants in the consolidated case were Dallas County; Road District No. 1 of Dallas County; City of Dallas; Dallas Independent School District; City of Grand Prairie; Grand Prairie Independent School District; and the Tax Assessors-Collectors of each of the foregoing taxing units. Pleas in intervention were filed by the State of Texas and Robert S. Calvert, Comptroller of Public Accounts, who is ex officio State Tax Commissioner.

In their pleadings the defendants and intervenors deny that plaintiffs' property is exempt from taxation, and the defendants, but not the intervenors, assert the unconstitutionality of Art. 6674v, V.A.C.S., on which plaintiffs rely. Defendants also seek an affirmative judgment declaring that plaintiffs are not entitled to the tax exemption and that Art. 6674v, V.A.C.S., is unconstitutional and void. Hereinafter defendants and intervenors will be referred to as appellants; plaintiffs will be referred to as appellees; Texas Turnpike Authority will be referred to as the Authority.

The Authority was created by the Acts 1953, 53rd Legislature, page 967, Chapter 410, now known as Art. 6674v, V.A.C.S. It is a state agency, authorized to construct and maintain toll roads, and for that purpose may issue bonds payable solely from the revenues of the roads. It may exercise the right of eminent domain. Its affairs are managed and controlled by a Board of Directors consisting of nine members. The three members of the Texas State Highway Commission are ex officio Board members; the other six are appointed for six-year terms by the Governor. The exercise by the Authority of the powers conferred by the Act is declared to be an essential governmental function, and its property is expressly exempted from taxation. That the Authority is a government agency and that property owned by the Authority is tax exempt, are not issues in this case.

The Authority was created only recently. But as long ago as 1874 it was provided by statutes which are still in effect that private corporations might be organized for the purpose of constructing and maintaining toll roads. Arts. 1447–1465, V.A.C.S. It was in accordance with these Articles and also Art. 1302, Subdivision 61, that appellee private corporations were organized— Texas Turnpike Company in January 1950, and Sam Houston Turnpike Corporation in December 1952. It will be observed that both appellee corporations were chartered and in existence prior to the creation in 1953 of the Authority. However the 1953 Act creating the Authority took into account that there might be private corporations already organized for the purpose of constructing and maintaining toll roads. In Art. 6674v, sec. 5, par. (n), and also in sec. 18, are provisions pertaining to such private corporations and toll roads constructed and operated by them.

Arts. 7145 and 7159, V.A.C.S., expressly provide that all the real, personal and mixed property of turnpike companies shall be listed and taxed. Nevertheless appellee companies contend that their property is tax exempt because under the terms of Art. 6674v, secs. 5(n) and 18, said property is brought within the tax exemption provisions of Art. XI, sec. 9 of the Constitution of Texas, Vernon's Ann.St.

■ Appellees in their brief concede that before property can be held exempt under Art. XI, section 9 of our Constitution, two things must be shown: (1) That the property sought to be exempt must be public property; that is, publicly owned; and (2) that it must be exclusively used for public purposes. A. & M. Consolidated Independent School Dist. v. City of Bryan, Texas, 143 Tex. 348, 184 S.W.2d 914; Lower Colorado River Authority v. Chemical Bank & Trust Co., 144 Tex. 326, 190 S.W.2d 48. Since this controversy is mainly concerned with the proper interpretation of Art. 6674v, secs. 5(n) and 18, in their relation to the cited section of the Constitution it becomes necessary for us to examine

the statutory provisions closely and to construe them carefully. And in doing so we must apply the well established rule of law that constitutional and statutory provisions exempting property must be strictly construed and must not be enlarged by construction. 40 Tex.Jur. 109.

Art. 6674v, sec. 5, par. (n), says that the Authority will not duplicate roads planned, commenced or constructed by a toll road corporation chartered prior to April 1, 1953, if it is provided in such corporation's articles, by-laws, or otherwise that none of the net income or profits shall ever inure to any private person, association, or corporation whatsoever; and that after payment of all indebtedness for the acquisition, construction, maintenance and operation of such toll road, title of all assets of the corporation shall be conveyed to the State or its counties. It is further stipulated that to come within the terms of the Act, the corporation must commence the construction of the toll road within 18 months from the effective date of the Act.

Art. 6674v, sec. 18, provides that the Authority shall in due time accept for the State as part of our free highway system any toll road constructed and operated by the corporation, subject among others to five enumerated conditions and requirements which we shall describe and discuss more fully later in this opinion. Further provision is made that the toll road corporation shall be obligated to make an irrevocable gift of all its assets to the State, and that it shall use all of its net income and profits to retire indebtedness created for the acquisition, construction, maintenance and operation of the toll road. At the time of the acquisition of any real property, the corporation must execute instruments of conveyance to the State, which instruments shall be deposited in escrow and shall be delivered to the Authority when the enumerated conditions have been met and complied with. The toll road corporation is given authority to pledge, mortgage and otherwise encumber its property for the acquisition, construction, maintenance and operation of the road, but the State of

Texas shall not be liable in any event for any indebtedness created by the corporation.

Art. 6674v, sec. 18, also contains this provision: "The equitable, beneficial and superior title to the property belonging to a corporation described in Section 5, subsection (n) hereof, which is subject to an escrow agreement provided herein shall be vested at all times in the State of Texas and shall constitute public property used for public purposes, subject only to any liens or encumbrances created against said property by such corporation to finance the acquisition, construction, maintenance or operation of such road * * *."

In substance the five enumerated conditions and requirements above mentioned are: (1) At the time of acceptance by the Authority the toll road must be clear of all encumbrances; (2) no compensation shall be required to be paid by the State; (3) at the time of acceptance the road shall be in good condition and repair to the satisfaction of the State Highway Commission; (4) the road shall have been constructed and maintained in a manner equal or superior to the standards of the State Highway Commission; and (5) in letting contracts for the construction and maintenance of the road the toll road corporation shall have followed the methods and procedures used by the State Highway Commission.

The record discloses that both appellees have adopted by-laws and have entered into escrow agreements in conformity with the requirements of Art. 6674v, secs. 5(n) and 18. Each of the agreements also contains a paragraph to the effect that if construction of the toll road should be abandoned and releases executed by the company and the Authority, the escrow agent is directed to turn back to the company all the escrow papers.

 Enactments and pronouncements by the legislative department of our government are entitled to great respect from other departments, including the judicial. Therefore we shall be reluctant to declare invalid these provisions in Art. 6674v, sec. 18: the "equitable, beneficial and superior title" to property belonging to appellees "shall be vested at all times in the State of Texas and shall constitute public property used for public purposes". Nevertheless it is a judicial duty, long and firmly established, to examine statutes closely when their constitutionality is in issue; and to strike them down if they contravene the basic principles laid down in the Constitution. "Mere fiat, whether pronounced by the Legislature or by a subordinate agency, does not make that a public use which is not such in fact, and the question (always present) as to the true nature of the use is one of law." Dallas Cotton Mills v. Industrial Co., Tex.Com.App., 296 S.W. 503, at page 505. The above statement has been quoted with approval in an opinion adopted by our Supreme Court, Housing Authority of City of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, at page 84, 130 A.L.R. 1053.

 We have concluded that under Art. 6674v, secs. 5(n) and 18, the property of appellees is not public property devoted exclusively to public purposes within the purview of Art. XI, sec. 9 of the Constitution of Texas, hence the said property of appellees is not exempt from taxation. To interpret the statutory provisions otherwise would in our opinion require us to hold that they contravene Art. XI, sec. 9, of the Constitution. Since we think that under the statutory provisions, appellees' property is subject to taxation, we hold that the questioned sections are not unconstitutional.

We believe that this is a correct analysis of the statutory provisions and of the agreements involved in this case: (1) Title to appellees' property—at least legal title—remains in appellees pending compliance with the escrow agreement; (2) the particular kind of equitable, beneficial and superior title which appellees assert vests in the State of Texas is not such public ownership as meets the requirement of the Constitution; (3) neither possession nor control of the property vests in the State of Texas; and (4) there is no assurance

that title, or possession or control will ever vest in the State of Texas.

The statute in question makes no attempt to dispose of the legal title. The legal title under any interpretation remains in appellees until delivery of the deeds to the State. And acceptance of the deeds by the Authority for the State may never take place, for it is forbidden unless and until the enumerated conditions and requirements have been fulfilled. It has been said by our Supreme Court: "The person having *legal title* to property is generally considered to be the owner thereof for purposes of taxation." Childress County v. State, 127 Tex. 343, 92 S.W.2d 1011, at page 1015 (emphasis supplied). We quote also from a Massachusetts case: "Under State constitutions and statutes exempting from taxation property belonging to a State it has been held that an ownership which does not comprise all the legal and equitable interests in the land was insufficient for an exemption, and likewise, that ownership as trustee was not the ownership necessary for an exemption." Animal Rescue League of Boston v. Bourne's Assessors, 310 Mass. 330, 37 N.E.2d 1019, 1023, 138 A.L.R. 110, at page 116.

■ Nor do we believe that the legislative pronouncement that the "equitable, beneficial and superior title to the property shall be vested at all times in the State of Texas" is sufficient to meet the constitutional requirements for tax exemption, when we construe the quoted words in connection with the other provisions of the statute. The general rule is that placing a conveyance in escrow, to be delivered upon performance by grantee of certain conditions, passes no title to the property. The title does not pass until the deeds are delivered following compliance with the conditions of the escrow agreement. Norman v. Wilson, Tex.Civ.App., 41 S.W.2d 331, error ref. But it is argued that the general rule is not applicable here because the parties, with the legislative blessing, have entered into an express contract whereby the passing of the equitable and beneficial title is not postponed until the delivery of the deeds following performance of the escrow agreement, but takes place immediately, as soon as the parties execute their agreement. Even if we were to agree with the argument, we still would not say that appellees have thus gained a constitutional exemption from the payment of taxes. We would be compelled to say that certainly this is not the kind or character of an equitable and beneficial title, since it is not coupled with possession or control, that warrants our holding that the property involved may be regarded as public property, that is, property publicly owned and used exclusively for public purposes in the sense contemplated under Art. XI, sec. 9 of the Constitution. In this connection we quote from an editorial note in 156 A.L.R. 1303, 1304:

"Although it is well settled that possession is not a necessary prerequisite for equitable ownership under an executory contract for the sale of land, it is submitted that, so far as tax exemption statutes are concerned, possession is, generally speaking, an important factor in determining whether or not the property is exempt. The rule of strict construction against claims of exemption would seem to require, as a basis for granting the exemption, that the equitable ownership has substantially all the qualities of full ownership, which would, if this principle is sound, include possession. Though there is no case exactly in point to support such a conclusion, it seems justifiable to assume that where possession is not in the equitable owner, exemption from taxation should as a rule not be granted except in every extraordinary circumstances."

The circumstances of this case plainly show that pending acceptance of the roads following performance of the escrow agreement, the State of Texas will have neither possession nor control of the roads—in fact may never acquire title, possession and control. To demonstrate the truth of our statement let us examine the terms of the statute and the agreements of the parties.

The acceptance of the property by the State, if it is ever to be accepted, is condi-

tioned upon the appellees following the methods and procedures used by the State Highway Commission in letting contracts, upon the construction and maintenance of the roads in a manner equal or superior to the standards of the State Highway Commission, upon the roads being in good repair and condition at the time of acceptance to the satisfaction of the State Highway Commission, and upon the roads being clear of all encumbrances. But meantime the State does not have possession of the property, or control over appellees and their operations to make sure that appellees comply with these conditions. There is no provision in the statute or the agreements authorizing the State to supervise the operations of appellees, or even to render technical assistance to see that the conditions are met. If appellees fail to comply with the conditions, or indeed if they abandon construction of the roads in accordance with the standards required by the conditions, all the State can do is to refuse to accept—and then it must refuse to accept—title, possession and control of the roads. And in case of abandonment it is contemplated that the title papers will be returned to the appellees after the execution of appropriate releases. All the while the property will have enjoyed a period—probably a long period of years—of exemption from the payment of taxes. The interest of the State in the property is no more than an indirect and uncertain expectancy which does not entitle the property to tax exemption. Cooley on Taxation, 4th Ed., Sec. 625, page 1321.

The State has no voice in the selection of the members of the boards of directors of appellee corporations. The appellee companies themselves, through privately chosen directors, free of control by the State, are authorized to set the amount of tolls charged, to set the amount of bonds issued and the interest rate to be paid on bonds, to set the amount of salaries to be paid to officers and employees, and to mortgage the property and determine the interest rate to be paid on mortgages.

The public is left unprotected in other respects also. Unlike public agencies, the appellees being private corporations, will not be required to sell their bonds to the highest and best bidder for cash, at not less than their par value, Art. 752j, V.A.C.S.; they will not be subject, as are public agencies, to penal statutes prohibiting the misapplication of public money, Title 4, Chapter 2, P.C., bribery, Art. 158 P.C., pecuniary interest by officers in public contracts, Art. 373, P.C., and nepotism, Art. 432.

In fairness to the organizers and present officials of appellee corporations we think we should say that there is nothing in the record to cast suspicion on their integrity or to impugn their motives. That they are honorable, high-minded, patriotic citizens is not brought in question here. We are not passing on their personal merits. We are simply passing on the status under our Constitution of a form of corporate organization. However we think it is proper to point out that no one can be sure of the character of persons into whose hands in the years to come the control of these corporate organizations may pass.

We shall not prolong this discussion. We believe that the following additional authorities lend support to our holding: Carolina-Virginia Coastal Highway v. Coastal Turnpike Authority, 237 N.C. 52, 74 S.E.2d 310; Appeal of City of Dubuque Bridge Commission, 232 Iowa 112, 5 N.W.2d 334; Southern Forest Land Co. v. Amite County, 176 Miss. 130, 168 So. 286; Bemis Hardwood Lumber Co. v. Graham County, 214 N.C. 167, 198 S.E. 843.

We hold that appellees' property under Art. 6674v is subject to taxation, and that therefore the statute is not unconstitutional. The first and second points in the brief of Dallas County and others, and point No. one (first paragraph) in the brief of City of Dallas and others, are sustained. All other points are overruled. The judgment of the trial court is reversed and rendered accordingly.

Reversed and rendered.